UNITED STATES DISTRICT COURT
for the
DISTRICT of MASSACHUSETTS

William G. Stevens,
              Plaintiff,

              v.

Robert Howland,
Joseph Murphy,
Robert Murphy,
Kathleen Dennehy,
Massachusetts Department of Corrections,
              Defendant

CIVIL ACTION
# 1:04-cv-11938

## COMPLAINT

### INTRODUCTION

1.  The plaintiff, William G. Stevens, a civilly detained resident of the Massachusetts Treatment Center (hereafter M.T.C.) at Bridgewater, Massachusetts brings this civil rights action against the Staff Program Director of the M.T.C., the Director of Treatment of the M.T.C., the Superintendent of the M.T.C., the Commissioner of Corrections and the Massachusetts Department of Corrections for violation of his civil rights, including the right to practice his religion, Wicca, and not be descriminated against for the practice of that religion.

### JURISDICTION

2.  This court has jurisdiction of the subject matter of this case under 28 U.S.C., §§ 1343, and 1367, including pendent and supplemental jurisdiction over claims under the Massachusetts General Laws c. 127, §§ 88 and 39E, c. 30A and c. 231A, which claims are so related to the claims under §§ 1343, that they form part of the same case or controversy.

2

PARTIES

    3.  The plaintiff, William G. Stevens, (hereafter Stevens) is a civil detainee at the M.T.C., 30 Administration Rd., Bridgewater, Plymouth County, Massachusetts.

    4.  The defendant, Robert Howland, (hereafter Howland) is the Staff Program Director of the M.T.C., 30 Administration Rd., Bridgewater, Plymouth County, Massachusetts.

    5.  The defendant, Joseph Murphy, (hereafter D.o.T) is the Director of Programs and Treatment of the M.T.C., 30 Administration Rd., Bridgewater, Plymouth County, Massachusetts.

    6.  The defendant, Robert Murphy, (hereafter Superintendent) is the Superintendent of the M.T.C., 30 Administration Rd., Bridgewater, Plymouth County, Massachusetts.

    7.  The defendant, Kathleen Dennehy, (hereafter Dennehy) is the Commissioner of the Massachusetts Department of Corrections, 50 Maple St., Medford, Worcester County, Massachusetts.

    8.  The defendant, the Massachusetts Department of Corrections is a "government" within the meaning of 42 U.S.C. §§ 2000cc.  Its principle place of business is 50 Maple St., Medford, Worcester County, Massachusetts.  The Department of Corrections is sued in its official capacity.

    9.  Each of the individual defendants is sued in both their official and their individual capacity.

    10.  At all times relevant to this action each of the defendants was acting under the color of state law.

    11.  Stevens is currently being detained at the M.T.C.

3

STATEMENT OF FACTS

12.  On September 1, 1999, Stevens pled guilty to a sex
offence in the Barnstable Superior Court and was sentenced to
prison.

13.  Stevens' sentence was completed January 31, 2004.

14.  On January 30, 2004 a petition to civilly commit
Stevens pursuant to G.L. c. 123A was filed in the Barnstable
Superior Court.  Stevens was ordered temporarily detained at
the M.T.C.

15.  Stevens is an adherant of the Wiccan religion, and
was elected leader of the M.T.C. Wiccan religious group on
March 12, 2004.

16.  The M.T.C. has recognized a Wiccan religious group
and allows it to meet twice weekly for 90 minutes each.

17.  Wiccans have 8 holy days called Sabbats.  The Sabbats
occur on the solstices and equinoxes as well as the cross-
quarters of the year. A copy of the Mass. D.O.C. Handbook
Section Four (IV) WiccanCalendar has been attached as Exhibit 1.

18.  Wiccans also typicallygather on the nights of the
new and full moons.  These are called Esbats. see Exhibit 1.

19.  The Massachusetts Department of Corrections Religious
Services Handbook, (hereafter Handbook) Section Three (III),
§§ WICCA (1) Holydays/festivals, require that; "If requested
Wiccans should be allowed to meet corporately and consume cake
and juice to celebrate these holy days.  Attached as Exhibit 2.

20.  During the last week of January, 2004, Howland was
given verbal notice that the Wiccan group would be gathering
on February 4, 2004 and that approved foods for corporate
Sabbat worship would be needed.  This request was denied.

4

21. During the second week of January, 2004, Stevens gave Howland written notice that the Wiccan group would be gathering on March 24, 2004 and that approved foods for corporate Sabbat worship would be needed. This request was denied.

22. On March 22, 2004, Stevens wrote a letter to the D.o.T. requesting that additional time and space be provided to the Wiccan group and that various religious items be provided for corporate Wiccan worship. The letter is attached as Exhibit 3.

23. The Wiccan group is currently forced to meet in a room approximately 8' X 8', known as the "B" corridor therapy room. This room has had to accomodate as many as 10 Wiccan practitioners at one time.

24. The space requested in the March 22, 2004 letter (Exhibit 3) grievance #04-3354 (Exhibit 4) and in the May 18, 2004 letter (Exhibit 10), the "C" Corridor Meeting Room is easily twice the size of the current space and is unused for any obvious purpose.

25. On April 7, 2004 Stevens filed grievance #04-3354 regarding inadequate time, space and equipment for Wiccan worship. A copy of the grievance is attached as Exhibit 4.

26. On April 9, 2004 Stevens submitted a letter to the D.o.T requesting items not previously requested be ordered for Wiccan corporate worship. A copy is attached as Exhibit 5.

27. On April 12, 2004, Stevens was accosted by Howland and informed that there was to be a meeting between Stevens, Howland and the Director of Civil Commitment, John Novero.

28. At the April 12, 2004 meeting it was strongly suggested by Howland and the Director of Civil Commitment that Stevens drop the April 12, 2004 grievance #04-3354 (Exhibit 4). Stevens

5

refused.

29.    Stevens was informed by Howland that all aspects of
the March 22, 2004 letter (Exhibit 3) were denied and that
individual Religious Request forms would have to be submitted
for each of the items requested in the April 9, 2004 letter.
(Exhibit 5)

30.    At the April 12, 2004 meeting Stevens gave Howland
written notice that the Wiccan group would be gathering on
April 30, 2004 and that the approved foods for corporate Sabbat
worship would be needed.  This request was denied.  A copy of
the request is attached as Exhibit 6.

31.    On April 15, 2004, Stevens' grievance # 04-3354 was
denied citing limited time and space.  It was further indicated
that requested items were not approved for Wiccans. (Exhibit 4)

32.    On April 16, 2004 Stevens appealed the denial of
grievance #04-3354 to the Superintendent, indicating where
in the Handbook and 103 CMR 471 the requested items were
approved. (Exhibit 4)

33.    On April 23, 2004, Stevens wrote a letter to the
D.o.T providing him with sources for outside volunteers so as
to become compliant with 103 CMR 471.09 (2) which requires
that an accredited representitive of the Wiccan faith be made
available.  A copy of 103 CMR 471.09 (2) is attached as Exhibit
7 and a copy of the April 23, 2004 letter is attached as Exhibit
8.

34.    On May 6, 2004 Stevens filed a grievance, # 04-3700,
requesting that the M.T.C. comply with D.O.C. policy and provide

6

the approved foods for Sabbat worship.  A copy of grievance
# 04-3700 is attached as Exhibit 9.

35.  Grievance #04-3700 further went on to request that
the M.T.C. institute a policy whereby this "oversight" wouldn't
recur. (Exhibit 9)

36.  On May 7, 2004 Stevens' grievance #04-3700 was returned
partially approved.  The Institutional Grievance Coordinator
(IGC), Sgt Edington found that "This institution will ensure
cake and juice is provided for upcomming approved Wiccan
religious events. (Exhibit 9)

37.  The IGC reinforced his assurance of compliance in
his response to remedy request #3 that ..."Wiccans be allowed
to provide their own Sabbat foods for the corporate celebrations,
which was denied. (Exhibit 9)

38.  On May 18,2004 a letter was written to the Deputy
Superintendent of the M.T.C. requesting additional space and
time be provided to the Wiccan group for religious programs.
A copy of the letter is attached as Exhibit 10.

39.  At the present time the M.T.C. provides daily access
frequently several times per day, to meeting rooms and services
including chapel for "mainstream" religious groups for their
activities.

40.  Protestant, Catholic and Muslim religious groups
have access to both office space and equipment to help with the
"conduct and administrstion of [their] religious programs".

41.  No answer was received to the May 18, 2004 letter.

7

42.   During the last week of May, 2004, Stevens was
informed by the D.o.T that the corporate worship items from the
April 9, 2004 letter had been ordered.

43.   On June 11, 2004 the Superintendent partially approved
Stevens' grievance #04-3354, denying additional space but,
"Request for items in Religious Services Handbook approved.   The
Director of Treatment will meet with the grievant and arrange
purchase of said items. (Exhibit 4)

44.   During the third week of June 2004 Stevens found out
that less than 20% of the items requested had in fact been
purchased.   A copy of "notification" is attached as Exhibit
11.

45.   Stevens was informed that less than $150.00 had been
spent due to budget issues.

46.   On June 21, 2004 Stevens wrote a letter to the
Superintendent with a G.L. c.66, section 10, Freedom of
Information Act request.   A copy of the letter is attached as
Exhibit 12.

47.   Stevens requested a copy of the Inmate Benefit Review
report covering the current and previous years as provided for
in 103 CMR 476.05. (Exhibit 12)

48.   Stevens further requested the D.O.C. Program Account
for the current and previous years as provided for in 103 CMR
476.09 as well as any information, knowledge or document
responsive to this line of inquiry.   (Exhibit 12)

49.   No answer has been received to the June 21, 2004
letter.

8

50.   On July 1, 2004 Stevens wrote a second letter to the
D.o.T, again providing him with the means to contact two (2)
nationally reknowned Wiccan groups.

51.   Stevens again requested that the D.o.T make use of
the information provided to become compliant with 103 CMR 471.09
(2). A copy of the letter is attached as Exhibit 13.

52.   No response has been received to either the April
23, 2004 letter (Exhibit 8) or the July 1, 2004 letter (Exhibit13)

53.   At the present time the M.T.C. employs full and/or
parttime non-inmate clergy members for the Protestant, Catholic
and Muslim groups to provide formal and/or informal services
for their respective groups as well as to handle confidential
material.

54.   On July  9, 2004 Stevens gave Howland written notice
that the Wiccan group would be gathering on July 30, 2004 and
that approved foods for corporate Sabbat worship would be
needed.   This request was denied.


CLASS ACTION

55.   The plaintiff class consists of all persons who are
members of the Wiccan religion and are incarcerated at the M.T.C.

56.   The class is so numerous that joinder of all members
is impractical.

57.   There are questions of law and fact common to the
class.   These questions predominate over questions affecting
only individual class members.

58.   The claims of Stevens are typical of the claims of
the class.

9

59. Stevens will adequately protect the interests of all the class members.

60. A class action is superior to other available methods for a fair and effective ajudication of this action. Seperate actions could result in inconsistant and varying decisions, and in conflicting and incompatable standards of conduct for the defendant.

## COUNT I VIOLATION of CIVIL RIGHTS

61. Stevens incorporates hereto by reference paragraphs 1 to 60 with the same force and effect as though fully set forth herein.

62. The defendants actions violate Stevens' rights under the First and Fourteenth amendments to the United States Constitution.

63. The defendants actions have violated Stevens' rights under the Declaration of Rights of the Massachusetts Constitution, Articles I, II, III, XI, and XIX rights to freedon of religion, freedom of association, the right to seek redress of grievance, access to the court and equal protection of the law.

64. Stevens alleges the named defendants in this case have acted in concert jointly and severly to violate the regulatory statutes and constitutional rights of the plaintiff class as incorporated by reference hereto, which entitles the plaintiff to damages and injunctive relief under 42 U.S.C.§1983.

## COUNT II VIOLATION of RELIGIOUS RIGHTS

65. Stevens incorporates hereto by reference paragraphs 1 to 64 with the same force and effect as though fully set forth

10

herein.

66.    Stevens resides in or is confined to an institution
as defined in §2 of the Civil Rights of Institutionalized
Persons Act (42 U.S.C. 1997)

67.    The Massachusetts Department of Corrections receives
Federal assistance.

68.    The actions of the Massachusetts D.O.C. and its
employees has imposed a substantial burden on the Religious
Rights of Stevens.

69.    The substantial burden by the defendants on the
religious exercise of Stevens, or removal of the burden would
affect interstate commerce.  Specifically, foods and other
items for corporate religious services would be purchased from
vendors from out of state.

70.    Stevens is entitled to injunctive and monetary
relief pursuant to the Religious Land Use and Institutionalized
Persons Act (42 U.S.C., §§2000cc, et seq.)

## COUNT III VIOLATIONS of D.O.C. REGULATIONS

71.    Stevens incorporates hereto by reference paragraphs
1 to 70 with the same force and effect as though fully set forth
herein.

72.    Stevens alleges that he is entitled to judicial review
of the denials of his grievances pursuant to G.L. c.30A because
the decision was based on error of law because, 103 CMR 471.07
(1)(d) requires that all recognized inmate religious groups

11

**shall** have **equal** access to physical space, equipment and services which the institution normally provides.

73.  103 CMR 471.09 (6) requires that adequate space and equipment **shall** be provided for the conduct and administration of religious programs.  And these programs are defined by 103 CMR 471.09 (4) to enclude but not be limited to; worship services religious instruction, reading and study, religious discussion groups and pastoral counciling.

## COUNT IV VIOLATION of M.G.L. c.127§§88

74.  Stevens incorporates hereto by reference paragraphs 1 to 73 with the same force and effect as though fully set forth herein.

75.  The defendants have violated G.L. c. 127§88 which requires that an inmate of any prison not be denied the free exercise of his religious beliefs according to the dictates of his conscience in the place where he is confined.

## COUNT V REVIEW & ENFORCEMENT of GRIEVANCES

76.  Stevens incorporates hereto by reference paragraphs 1 to 75 with the same force and effect as though fully set forth herein.

77.  The defendants have acted outside their statutory authority or jurisdiction because G.L. c. 127 §38E, requires that the Department of Corrections promulgate regulations to establish a fair, impartial, speedy and effective system for the resolutition of grievances filed against the department or its officers by inmates.

12

78. Stevens further alleges that the defendants acted in such a manner as to be arbitrary, capricious, abusive of discretion or otherwise not in accordance with law.

79. Stevens is entitled to judicial review of so much of the grievance decisions which illegally denied Stevens his right to religious freedom and equal access to the facilities, equipment and other resources of the D.O.C. for religious practice, and further judicial enforcement of the favorable portions of the grievance decisions which the defendants have failed to impliment as provided by G.L. c.127, §138H and c.30A §14.

## COUNT VI DECLARATORY RELIEF

80. Stevens incorporates hereto by reference paragraphs 1 to 79 with the same force and effect as though fully set forth herein.

81. Stevens alleges that he is entitled to declaratory and injunctive relief, pursuant to 28 U.S.C. §2201, 42 U.S.C. §1983 and G.L. c. 231A declaring that he is entitled to equal access to the physical space, equipment and services which the M.T.C. normally provides as required by 103 CMR 471.07 (1)(d), adequate space and equipment for the conduct and administration of religious programs as required by 103 CMR 471.09 (6), that such equal access include, at minimum, sufficient time to engage in religious activities which include but are not limited to worship services, religious instruction, reading and study, religious discussion groups and pastoral counciling.

13

RELIEF SOUGHT

Wherefore the plaintiff requests that the court grant the following relief:

1.  Issue a short order of notice.

2.  Reverse the denial of the plaintiffs grievances.

3.  Grant a preliminary and perminant injunction restraining the defendant from failing to provide the plaintiff(s) with equal access to physical space, equipment and services which the M.T.C. normally provides for religious groups, including but not limited to the physical space and time to engage in the full scope of approved religious activities.

4.  Enter a declaration of the plaintiffs right to equal access for Wiccan religious worship and study.

5.  Award the plaintiff damages, costs and reasonable attorneys fees for violation of his civil rights pursuant to 42 U.S.C. 1983.

6.  Certify this action as class action.

7.  Grant further relief as justice and equity require.

William G. Stevens,
Plaintiff, ProSe.

William G. Stevens, Pro Se
Mass Treatment Center
30 Administration Rd.
Bridgewater, MA 02324

14

## VERIFICATION

I, William G. Stevens M-85829, state under the pains and penalties of purjury that I have made all the factual allegations in the foregoing complaint as true and correct, with personal knowledge and observation.

DATED: _8-11-04_

William G. Stevens