**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**WILLIAM STEVENS,**

       **Plaintiff,**

   **v.**                   **Civil Action No. 04-11938 JLT**

**ROBERT HOWLAND, <u>et al</u>.,**

       **Defendants.**

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION**</u>
<u>**TO PLAINTIFF'S  MOTION TO AMEND THE COMPLAINT**</u>

    For the reasons set forth below, defendants, through counsel, hereby oppose plaintiff's motion to amend the complaint.

<u>**INTRODUCTION**</u>

    This is a civil rights action brought by William Stevens ("Stevens"), an individual who is presently under temporary civil commitment to the Massachusetts Treatment Center for Sexually Dangerous Persons ("Treatment Center"), pursuant to M.G.L. c.123A, §14(e) pending the disposition of the Sexually Dangerous Person petition filed by the Barnstable District Attorney. Stevens' original complaint alleges infringements upon his religious practices as a Wiccan, including the failure to provide juice and cake for several religious celebrations in February and March, 2004, the failure to provide religious items for Wiccan corporate worship, and the failure to provide a larger room for Wiccan religious services at the Treatment Center.

    Stevens seeks to amend his complaint by adding ten (10) new claims.  The bulk of the new claims, however, concern the conditions of confinement at the Treatment Center, and are unrelated to the allegations in the original complaint.  In this regard, Stevens proposes to add

Natalya Pushkina, the Treatment Center librarian, as a defendant.  For the reasons set forth below, the motion to amend the complaint to incorporate allegations pertaining to his conditions of confinement at the Treatment Center should be denied.

## ARGUMENT

### I.    RULE 15(a) STANDARD.

Leave to amend a complaint under Rule 15(a) lies within the discretion of the court. Johnston v. Holiday Inns, Inc., 595 F.2d 890 (1st Cir. 1979).  Although leave to amend pleadings should be given freely, denial is justified on grounds such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962). "`Futility' means that the complaint, as amended, would fail to state a claim."  Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  The district court applies the same standard for legal sufficiency as it applies to a Rule 12(b)(6) motion.  Id.  A court may also deny amendment when the amended pleadings would not survive a motion for summary judgment.  Hennessy v. City of Melrose, 194 F.3d 237, 252 n.6 (1st Cir. 1999).  A court "need not grant every request to amend come what may." Correa-Martinez v. Arrillaga –Belendez, 903 F.2d 49, 59 (1st Cir. 1990).  Simply put, "the Rules do not require the Court to carry a rubber stamp."  Almeida v. United Steelworkers of America, 50 F. Supp.2d 115, 120 (D.R.I. 1999). "Concerns about management of a case in which plaintiffs are allowed to join claims arising from separate incidents each involving different parties and predominantly unrelated issues weigh heavily against exercising discretion, when any exists under the Federal Rules, to bring into one civil action such a complex array of claims and

parties as results when multiple incidents involving different parties are allowed to proceed in one case." Keeton, Judging in the American Legal System, § 16.6.4., p. 364 (1999)."

## II. REQUEST TO AMEND THE COMPLAINT SHOULD BE DENIED BECAUSE THE ALLEGATIONS CONCERNING CONDITIONS OF CONFINEMENT AT THE TREATMENT CENTER INVOLVE UNRELATED ISSUES.

The Court should deny the motion to amend the complaint to the extent that Stevens seeks to litigate allegations concerning issues unrelated to his religious practices, e.g., classification, treatment for sexual dangerousness, and least restrictive alternative conditions of confinement at the Treatment Center, substantive due process, loss of personal property, and an entirely new party (Pushkina). Stevens' amended complaint makes no attempt to link these claims to his Wiccan religious practices. Therefore, because the new claims arise from separate and predominantly unrelated issues, this Court, in its discretion, should deny the motion to amend the complaint. See Seaver v. Manduco, 178 F. Supp.2d 30, 39 (D. Mass. 2002).

## III. THE PROPOSED AMENDMENTS CONCERNING CONDITIONS OF CONFINEMENT AT THE TREATMENT CENTER WOULD BE FUTILE.

An analysis of Stevens' allegations concerning the Treatment Center compels the conclusion that the proposed amendments to the complaint would be futile. [1]

### A.    Counts VII & XV:    Loss or Destruction of Personal Property.

Stevens alleges that during the August 18, 2004 search of his cell a staff member damaged his medicine bag and its contents. Proposed Amended Complaint ("PAC") ¶¶ 85-97 & Exhibits 14-16. Stevens further alleges during his January 20, 2004 transfer from the North Central Correctional Center ("NCCI") to the Treatment Center, he was required to leave personal

---

[1] Defendants assert that there are standing issues, given that Stevens is under temporary civil commitment to the Treatment Center. Should Stevens not be committed, defendants may seek leave to file a supplemental memorandum

4

property items behind that have not been forwarded to him and are presumed to be lost or stolen. PAC ¶¶ 172-180 & Exhibit 19.

Plaintiff's claims regarding the alleged negligent handling of his personal property are futile. First, he is unable to state a claim under 42 U.S.C. § 1983 where a state-provided post-deprivation remedy (e.g., state tort law) is available to him as a remedy. See Parratt v. Taylor, 451 U.S. 327, 330-331 (1981) (overruled in part by Daniels v. Williams, 474 U.S. 344 (1986)) and Hudson v. Palmer, 468 U.S. 517 (1984); Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 535 (1st Cir. 1995) (no § 1983 claim lies for "random and unauthorized" conduct of state officials because the state cannot "anticipate and control [such conduct] in advance"). The Parratt-Hudson doctrine applies to both negligent and intentional acts of state officials. Hudson, 468 U.S. at 533. An adequate post-deprivation remedy may lie under statute or common law tort remedies available in state courts. Cronin v. Town of Amesbury, 81 F.3d 257 (1st Cir. 1996).

Plaintiff's claim that the state defendants lost or destroyed his personal property can be raised in a negligence claim against the DOC under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, et seq. However, the Eleventh Amendment bars suit against a state by its own citizens unless the state has waived its sovereign immunity. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974) (the Supreme Court has consistently held that the Eleventh Amendment precludes such suits in the absence of the state's consent to suit). Through language in the MTCA, the Commonwealth expressly consents to suit only in its own courts:

> All civil actions brought against a public employer on a claim for damages cognizable under this chapter shall be brought in the county where the claimant resides or in the county where such public employer is situated except that in the case of the Commonwealth such civil actions shall be brought in the county where the claimant resides or in Suffolk county. The superior court shall have jurisdiction of all civil actions brought against a public employer.

M.G.L. c. 258, §3 (emphasis added).  The Supreme Judicial Court has expressly held that the MTCA does not waive the Commonwealth's Eleventh Amendment immunity from suit in federal court.  Irwin v. Commissioner of the Dept. of Youth Services, 388 Mass. 810, 819-21 (1983).  See also Rivera v. Commonwealth of Massachusetts, 16 F. Supp.2d 84, 87 (D. Mass. 1998).  The proposed amendment is futile.

**B.    Count VIII:  Refusal to Copy Documents (Access to Court).**

Count VIII of the proposed amended complaint alleges a violation of Stevens' access to court right due to the refusal of the Treatment Center librarian to make copies.

It  is now well established that an inmate must make a prima facie showing of some injury or prejudice to his access to court in order to succeed with a claim of denial of access to court. Lewis v. Casey, 518 U.S. 343 (1996); Sowell v. Vose, 941 F.2d 32, 34-35 (1st Cir. 1991) (except for situations which constitute "an absolute denial of access to legal materials or law library or legal assistance, an inmate must show an actual injury as a prerequisite to recover."). In Lewis v. Casey, supra, the Supreme Court clarified the scope of a prisoner's right to access to the courts, holding that: 1)  to succeed on an access to court claim a prisoner must demonstrate an actual injury resulting from deficiencies in the prison's law library or legal assistance program;  2) meaningful access to court is limited to the initial pleading stage; and 3) a prisoner's right to access to the courts is restricted to actions challenging criminal convictions or the conditions of their confinement.  Lewis v. Casey, 518 U.S. at 349-56.  Moreover, federal courts have long held that a prison may place conditions on an inmate's right to meaningful access to the courts.  See Cepulonis v. Fair, 732 F.2d 1, 4 (1st Cir. 1984); Green v. Warden, U.S. Penitentiary, 699 F.2d 364 (7th Cir. 1983) ("The right of access to the courts has never been held to be absolute or unconditional, especially in the context of prisoner litigation."); Cookish v.

Cunningham, 787 F.2d 1 (1st Cir. 1986). In <u>Cepulonis v. Fair</u>, <u>supra</u> at 4, it was held that inmates have "no absolute right to library access as such, since disciplinary and security considerations may weigh against...[their] use of library facilities or contact with fellow inmates."

Here, it is clear that Stevens has been provided with access to court where he has been able to file the instant complaint and several motions. While denied a copy a particular decision to send to his attorney, Stevens does not indicate why he could not provide his attorney with the citation of the case via telephone or a letter. In the absence of a showing of an actual injury to his access to court, this proposed amendment to the complaint should be denied as futile.

### C.      Count IX: Least Restrictive Conditions.

In count IX of the proposed amended complaint, Stevens alleges that he is being held at the Treatment Center [1] "in conditions of confinement which far exceed the least restrictive alternative, and [2] which are substantially more restrictive that the punitive conditions under which the plaintiff was held while in prison." PAC, ¶¶ 48, 113.

The concept of "least restrictive conditions" originated in Federal consent decrees entered in the early 1970's which provided that the Treatment Center be treated as a Department of Mental Health ("DMH") facility and that DMH was to accord its residents "the least restrictive conditions necessary to achieve the purpose of commitment." <u>King Greenblatt</u>, 53 F. Supp.2d 117, 120 (D. Mass. 1999). The Department of Correction ("DOC") was given responsibility for security and custodial personnel. <u>Id</u>. After the enactment of legislation in 1993 consolidating the operation of the Treatment Center in the DOC, the Commonwealth moved to vacate or terminate the consent decrees. In 1999, the Court (Mazzone, J.) granted the Commonwealth's motion to terminate the decrees. <u>Id</u>. at 139. During the litigation, the DOC submitted original and amended

management plans for the Treatment Center to provide details as to how the Department proposed to operate the facility. Id. at 121-122. The Court, aided by a Special Master, conducted an extensive and lengthy review, which included visiting the Treatment Center, receiving letters from residents, requiring fifteen months of monthly reports from the Commonwealth, and finally, conducting full adversarial evidentiary hearing. Id. at 122-124. During the course of this litigation, the residents were represented by three large law firms. The Court scrutinized all aspects of Treatment Center operation against the intent and spirit of the consent decrees, including treatment and educational programs, work, property, classification, and it concluded:

> Effective treatment is offered; physical conditions have improved greatly; there are differing levels of security; meaningful work, education, and avocational programs; and discipline, including sequestration, conforms to acceptable standards of due process; all under the least restrictive conditions necessary to achieve the purposes of commitment, namely, the care, treatment, rehabilitation, and custody of sexually dangerous persons.

Id. at 137. Accordingly, given the exhaustive treatment by Judge Mazzone, the proposed amendment seeking de novo litigation of the "least restrictive" issue should be denied as futile. [2]

It would also be futile to allow an amendment to the extent Stevens asserts that the conditions at the Treatment Center are "more restrictive" than those at NCCI. Nothing requires that the conditions be equivalent at different correctional facilities, and in fact, the Treatment

---

[2]  Pursing these claims on the theory of substantive due process would be futile. The substantive component of the Due Process Clause protects against "certain government actions regardless of the fairness of the procedures used to implement them. Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995), cert. denied, 516 U.S. 1159 (1996) citing Daniels v. Williams, 474 U.S. 327, 331 (1986). See also Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991) (comparing substantive due process to procedural due process) (citing Monroe v. Pape, 365 U.S. 167, 171-172 (1961)); Amsden v. Moran, 904 F.2d 748, 752-53 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991) ("[A]though the yardstick against which substantive due process violations are measured has been characterized in various ways, we are satisfied that, before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking." ). Thus, substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty.'" Aime v. Commonwealth, 414 Mass. 667 (1993), quoting United States v. Salerno, 481 U.S. 739, 746 (1987). The conditions at the Treatment Center, as described by the proposed amended complaint, simply do not rise to the level of conduct that "shocks the conscience."

Center is unique facility with a unique population. NCCI is a prison that houses convicted state prisoners who serving all types of sentences. The Treatment Center houses only sex offenders, a population that poses particular dangers to the community. Its population includes four distinct components: (1) sex offenders serving civil commitments that were imposed prior the 1990 legislative curtailment of civil commitment; [3] (2) sentenced, non-civilly committed prisoners who are participating voluntarily in sex offender treatment provided at the Center; (3) persons like Stevens who are being evaluated for civil commitment; and (4) inmates who have been civilly committed under the reinstated statute. [4] The populations must be managed in accordance with state law requiring the separation of the "civil" and "criminal" components. [5] Although both NCCI and the Treatment Center are designated as medium security, or "Level 4" facilities, the Treatment Center, as the sole facility receiving males the various provisions of G.L. c. 123A, must manage prisoners who require all levels of security. Another major difference between the Treatment Center and NCCI involves the process of admission and discharge. Admission and discharge from NCCI is a classification function; accordingly, the DOC has exclusive control to determine the facility's population and composition. In contrast, under G.L. c. 123A, the courts are the gatekeepers for the Center's civil component. Finally, where the Treatment Center is geared exclusively to providing specialized treatment and secure confinement to its unique

---

[3] In 1990, G.L. c. 123A was amended to curtail new civil commitments to the Treatment Center after September 1, 1990, and directed "the Commissioner of Correction to develop a plan for a program of voluntary treatment services for sex offenders to be offered in facilities operated by the department of correction." St. 1990, c. 150, §§ 104, 304 (repealing §§ 3-7 of G.L. c. 123A). See Lyman v. Commissioner of Correction, 46 Mass. App. Ct. 202 (1999).

[4] The Legislature reinstated civil commitment in 1999. St. 1999, c. 74, sec. 8, approved with emergency preamble, Sept. 10, 1999, amending G.L. c. 123A, § 1 and adding G.L. c. 123A, §§ 12-15.

[5] St. 1990, c. 150 § 104 requires that civilly committed inmates be kept "separate and apart" from State prison inmates at all times.

population, it is not at all surprising that the facility must be operated differently than NCCI.

At best, Stevens invites an equal protection comparison of the conditions at distinct facilities. As this claim involves neither fundamental rights nor a suspect class, the appropriate standard would be a rational basis test. See Shifrin v. Fields, 39 F.3d 1112, 1114 (10th Cir. 1994) (violent offenders and repeat offenders are not a suspect class); Neal v. Shimoda, 905 F. Supp. 813, 819 (D. Hawaii 1995) (sex offenders are not a suspect class), reversed on other grounds, Neil v. Shimoda, 131 F.3d 818 (9th Cir. 1997). This is not a difficult standard to meet. See Western & Southern Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 674 (1981) (parties challenging legislation under the equal protection clause cannot prevail so long as "the question is at least debatable"); Dickerson v. Attorney General, 396 Mass. 740, 743 (1986) ("Absent a showing that a statute [or policy] burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate State interest.").

It is apparent that Stevens' litany of grievances about life at the Treatment Center are predominantly about matters of comfort, none rising to the level of a constitutional violation. [6]

Cells  -  Stevens alleges that he was housed in a single cell at NCCI, but resides in double cell at the Treatment Center and lacks the space required under Department of Public Health regulations ("DPH").  PAC ¶ 112.  He can cite no right to single cell housing. Nor does Stevens have a private right of action under DPH regulations. See infra at pp. 17-19.

---

[6]  The Eighth Amendment protection from cruel and unusual living conditions in prison has an objective and a subjective component. The prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk. Farmer v. Brennan, 511 U.S. 825, 837  (1994). The Constitution "does not mandate comfortable prisons"; it prohibits "inhumane ones." Id. (internal quotation marks omitted).

<u>Lockers</u>   -   Stevens alleges that at NCCI he had adequate storage space, and at the Treatment Center, 5 cubic feet in one locker.  PAC ¶ 113.  There is no allegation that the storage space provided at the Treatment Center deprives Stevens of life's necessities.

<u>Light</u> - Stevens alleges that at NCCI he was given a reading lamp, but in the Treatment Center he is only allowed an overhead light that is too bright for the top bunk and not bright enough for the bottom bunk. PAC ¶ 137. The allegation does not state a constitutional violation.

<u>Law Library</u> -  Stevens alleges that the law library at NCCI operated 39 hours per week, but that the Treatment Center library is open only 10 ½ hours per week, with his actual access being less. PAC ¶ 114.  Treatment Center inmates may not "scan" volumes, but must sign out law books individually.  PAC ¶ 115.  The Treatment Center law and general libraries are combined in a single room, limiting the numbers accommodated. PAC ¶ 116.  Treatment Center inmates cannot copy "non-legal" material, such as grievances and "personal and business correspondence." PAC ¶ 117.   However, these allegations fail to state an access to court claim. Stevens alleges no actual prejudice to his access to court. <u>Lewis v. Casey</u>, 518 U.S. at 351. Moreover, the right of access to the courts does not include non-legal activities, such as private business. The proposed amendment is futile.

<u>Yard Access</u>   -  Stevens alleges that NCCI allowed yard access up to 49 hours weekly, t he Treatment Center only up to 18 ½ hours. PAC ¶ 118.  NCCI's yard has two running tracks, a softball field, a soccer field, a softball field, three basketball courts, three horseshoe pits, six sets

of work out bars, a Bocce pit, while the Treatment Center has two basketball courts and a handball court with a track. NCCI has benches, bleachers, and picnic tables, which are lacking at the Treatment Center. Treatment Center inmates are prohibited from bringing books, papers or games to the yard. PAC ¶ 119.  Since access to the yard and outdoor exercise is constitutionally adequate at the Treatment Center, this amendment is futile.

<u>Gym Access</u> - Stevens alleges that the NCCI gym was accessible 39 hours weekly, and the Treatment Center gym, 15 hours. Norfolk provides extensive free weights and allows walkman radios and games. The Treatment Center lacks free weights, and inmates cannot bring their walkman radios or games. PAC ¶¶ 122-123.  Stevens states nothing to indicate that the gym access fails to afford him reasonable opportunity for exercise and socialization.

<u>Visits</u> - Treatment Center visiting rules require a visitor who arrives after the completion of the hourly inmate movement period to wait until the next movement to visit, while NCCI prisoners may go to visits immediately upon arrival of the visitor. PAC ¶ 124.  Stevens alleges that Treatment Center inmates are strip-searched after visits. PAC ¶ 125.

The proposed amendments would be futile. First, the Federal Due Process Clause does not guarantee unfettered visits. <u>O'Malley v. Sheriff of Worcester County</u>, 415 Mass. 132, 136 n.7 (1993) citing <u>Kentucky Department of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). Second, Stevens does not assert that he has been denied the opportunity for visits, or that Treatment Center policies have caused his own visits to be less frequent. He has no standing to raise claim of other inmates, or for that matter, the visitors themselves. Third, strip searching sex offenders following full contact visits with outsiders is reasonable, particularly given the risk of escape posed by sex offenders who are subject to or facing a potential lifetime indeterminate

civil commitment, in conjunction with the extreme risk of harm they pose to the community. See Arruda v. Fair, 547 F. Supp. 1324 (D. Mass. 1982), aff'd 710 F.2d 886 (1ˢᵗ Cir.), cert. den. 464 U.S. 999 (1983) (strip searches of segregation inmates following visits did not violate the Fourth and Eighth Amendments or any privacy right); Langton v. Commissioner, 404 Mass. 165 (1989).

Canteen and Cooking - Stevens alleges that NCCI's canteen sells items not available at the Treatment Center, and that the Treatment Center restricts the frequency of orders to every 90 days. PAC ¶¶ 126-127.  These allegations concern comfort items, not constitutional rights.

Employment - Stevens alleges that there 40 prisoners working in the prison industries at NCCI at $40.00 per day while the Treatment Center has 15 jobs at $2.00 per day. PAC ¶¶  128. Prisoners have no right to work or attendant benefits. See Jackson v. Hogan, 388 Mass. 376, 379 (1983); Rhodes v. Chapman, 452 U.S. 337 (1981); Pell v. Procunier, 417 U.S. 817 (1974).

Education - Stevens alleges that at NCCI there were educational programs such as welding, small engine repair, horticulture, food services and barber school while the Treatment Center, he alleges, offers no courses beyond a GED. PAC ¶ 129.  What he fails to note, however, is the extensive program of sex offender treatment provided by the Treatment Center, which is available to all inmates, including those admitted for evaluation. While the balance of programming may be different at the Treatment Center, it is reasonably weighted in accordance with the facility's primary function.

Word Processing - Stevens alleges that at NCCI, he used a word processor and typewriter and spell check. The Treatment Center provides electric typewriter without memory or spell check. Inmates who resided at the Treatment Center since 1997 retain computers and printers

obtained prior to that time. PAC ¶ 130.   It is well established that prison inmates do not have a constitutional right to use or possess typewriters and word processors**.** Roberts v. Cohn, 63 F. Supp. 2d 921 (N. D. Ind. 1999) (collected cases).  Nor does he allege a denial of access to court.

Showers - Stevens alleges that NCCI's showers have standard controls, but the Treatment Center's leave water on for 15 seconds at a preset temperature. PAC ¶ 131.   There is no allegation that washing facilities are constitutionally inadequate to maintain hygiene.

Newspapers -  At NCCI, Stevens could freely exchange newspapers with other inmates. At the Treatment Center, exchanging newspapers is not allowed. PAC ¶ 132.  He does not allege that he did not have access to news sources thorough other means, such as the library and TV.

Chow Hall and Food  -  The chow hall at NCCI has sufficient tables and seats, according to Stevens, but Treatment Center inmates are "herded through the chow hall." PAC ¶ 133.  As noted above, the required separation of civil and sentenced populations warrants efficient usage of dining facilities. Stevens also complains that the food preparation at the Treatment is "at best indifferent and at worst atrocious." His conclusory allegation that the kitchen makes mistakes in the following the recipes, however, does not state a constitutional violation. PAC ¶ 134.

Inmate Council - Stevens alleges that there is an inmate council at NCCI and other prisons, inmates are elected by prisoners and advocate on their behalf with the administration. There is no inmate council or lifer's group at the Treatment Center. PAC ¶ 136.  However, inmates have no established right to prisoner associations within correctional facilities. Jones v. Prisoners' Labor Union, Inc., 433 U.S. 119 (1977). Therefore, the Department is not obliged to expand these groups beyond NCCI and the proposed amendment is futile.

### D.     Count X: Restrictions on Telephones.

Stevens alleges that telephone calls at both facilities are subject to monitoring and recording, and he is limited to calling a pre-authorized list of 5 attorneys and 10 other persons. PAC ¶¶ 140-147.  Stevens alleges that because all calls must be made through the Department's carrier, and because the carrier pays the Department a commission, the phone calls are substantially more expensive.  However, these practices were upheld in Gilday v. DuBois, 124 F.3d 277 (1st Cir. 1997).  The practice of granting one telephone system an exclusive inmate telephone service business in exchange for a portion of the revenues does not impinge on constitutional rights or amount to a taking.  Arsberry v. Illinois, 244 F.3d 558 (7th Cir. 2001).

### E.     Count XI: Waiver of Confidentiality (Fifth Amendment).

Stevens alleges that the Department refuses to provide him sex offender treatment unless he executes a waiver.  Stevens alleges that this is tantamount to waiving his Fifth Amendment right against incrimination. PAC ¶ 148.  Stevens is incorrect on both points. The referenced waiver contains an acknowledgement that statements made in treatment may be used by Qualified Examiners, other evaluators and the district attorneys for the purpose of civil commitment determinations under G.L. c. 123A. Stevens' Fifth Amendment claim is foreclosed by Lyman v. Commissioner of Correction, 46 Mass. App. Ct. 202 (1999) and McKune v. Lile, 536 U.S. 24 (2002). In Lyman, the Appeals Court held that the provision of the Department's sex offender policy requiring a prisoner to admit to his sentenced offenses as a condition of attaining lower security classification does not violate the Fifth Amendment. Lyman, 46 Mass. App. Ct. at 204.  The Appeals Court further held that the requirement that a participant sign the sex offender treatment waiver agreement that contains an admission that he is a sex offender did not run afoul

of the Fifth Amendment's prohibition against coerced self-incriminating testimony or the prohibition under art. 12 of the Massachusetts Constitution against the compelled furnishing of evidence against oneself. The requirement the inmate admit he is a sex offender is not a penalty which implicates either the federal or the state constitutional provision. Id. at 205 (citing Quegan v. Massachusetts Parole Board, 423 Mass. 834, 837-838). Finally, the Appeals Court noted that the mandate of St. 1990, c. 150, § 104 and the legitimate treatment goals expressed in 103 DOC 446 that an offender's acknowledgement of having committed a sexual offense is essential for rehabilitation and transfer to lower security. Id. at 206. The United States Supreme Court rejected a similar challenge in McKune v. Lile, supra, where a sex offender refused to sign an "Admission of Responsibility" form in which he would accept responsibility for the crime that he was convicted or complete a sexual history in which he details all prior sexual history, whether criminal or not. Id. The Supreme Court held that the sex offender treatment requirements did not violate Fifth Amendment protections, acknowledging that States have a vital interest in rehabilitating sex offenders. Id. at 32. Since the context is prison, these requirements must be analyzed in light of limitations on privileges attendant to incarceration. Citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), the McKune Court asserted that rehabilitation is a valid penological interest that must be weighed against the exercise of an inmate's liberty. The limitation on prisoners' rights also follows from the need to grant prison authorities the necessary authority to administer the prisons. Turner v. Safley, 482 U.S. 78 (1987). Id. "Determining what constitutes unconstitutional compulsion involves a question of judgment: Courts must decide whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the de minimis harms against which it does not." Id. As a touchstone, the Court applied the framework

articulated in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), for determining whether prison conditions may give rise to a state-created liberty interest, <u>i.e.</u>, whether conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" <u>McKune</u>, <u>supra</u> at 2026, citing <u>Sandin</u>, 515 U.S. at 484. The Court noted that while the <u>Sandin</u> liberty interest determination "may not provide a precise parallel for determining whether there is a compelled self-incrimination, … it does provide useful instruction for answering the latter inquiry." <u>Id</u>. at 2026-27.   The <u>McKune</u> Court held that the treatment requirements did not implicate a liberty interest.

Similar considerations warrant denial of the motion to amend at bar. The Commonwealth has a compelling interest not only in breaking down denial and effecting sex offender treatment, but also in being able to assess the inmate's degree of progress or lack thereof.

Finally, should Stevens be committed to the Treatment Center, his refusal to participate in sex offender treatment does not mean that he will not be released in the future.  State law does not mandate completion of treatment as a condition of discharge; discharge from civil commitment occurs upon the finding of a judge or jury that the individual is no longer a sexually dangerous person. G.L. c. 123A, § 9. Treatment refusers have successfully petitioned for discharge. <u>See</u>, <u>e.g.</u>, <u>Wyatt, Petitioner</u> , 428 Mass. 347 (1998) (upholding judgment discharging civilly committed inmate who had refused treatment). The proposed amendment is futile.

### F.    Count XII: Failure to Provide Treatment (Challenge to Civil Commitment).

In count XII of the proposed amended complaint, Stevens acknowledges that civil commitment requires that the individual be (1) convicted of a sex offense, (2) have a mental abnormality or personality disorder, and (3) be likely to engage in sexual offenses if not confined. PAC ¶¶ 149; G.L. c. 123A, § 1.  However, Stevens alleges that the sex offender

17

treatment available at the Treatment Center is not an effective cure for sexual predation.  PAC ¶¶

151-152.  He asserts that the sex offender treatment program provided for sentenced prisoners

can be completed in four years, but the Treatment Center program is interminable. PAC ¶ 153.

He also asserts that he has never been made aware of the risks and benefits of participation in the

treatment program. PAC ¶ 156.  The proposed amendment should be denied as futile.

As preliminary matters, (1) Stevens lacks standing to challenge the constitutionality of

civil commitment unless he is civilly committed; and (2) a § 1983 action is not appropriate to

challenge the fact or duration of one's confinement.  See Heck v. Humphrey , 512 U.S. 477

(1994); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

Nonetheless, the proposed amendment would be futile because the Supreme Court has

upheld the constitutionality of sex offender civil commitment laws that are similar to the current

Massachusetts statute.  Kansas v. Hendricks, 521 U.S. 346 (1997). Like the Massachusetts

statute, the Kansas statute provided for the civil commitment of a person who "has been

convicted of or charged with a sexually violent offense," and "suffers from a mental abnormality

or personality disorder which makes the person likely to engage in the predatory acts of sexual

violence." Id. The Supreme Judicial Court has squarely rejected the contention that the pre-1999

version of G.L. c. 123A violates the substantive due process requirements of the United States

and the Massachusetts constitutions. In re Dutil, 437 Mass. 9 (2002).

### E.    Count XIII: Department of Public Health Regulations

In count XIII, Stevens asserts that the floor space in his Treatment Center cell is less

required than Department of Public Health ("DPH") regulations. PAC ¶¶ 159-162.  He also

complains that the he has no access to a toilet when he is in the Treatment Center yard, in

violation of DPH regulations. PAC ¶¶ 163-165. However, the law is clear that in the absence of specific enabling legislation, state regulations do not afford prisoners a private right of action for enforcement or damages. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543 (1998) (the absence of any indication from an enabling statute that the legislature intended a private cause of action to exist for its enforcement, a private cause of action, whether for injunctive relief or for damages, cannot be inferred from an agency regulation); Borucki v. Ryan, 407 Mass. 1009 (1990). Where no state court has specifically interpreted a statute as affording a private right of action, the federal court should not imply such a right. See Trustees of Boston University v. ASM Communications, 33 F. Supp.2d 66, 75 (D. Mass. 1998) (rejecting private right of action under state criminal statute forbidding sale of term papers). The reluctance of courts to view the violation of any administrative regulation as conferring a private remedy for damages is also based on a well-founded concern that such a policy would discourage agencies from promulgating any standards for fear of encountering endless litigation. See Touche Ross & Co. v. Reddington, 442 U.S. 581, 578 (1979). Such considerations are properly addressed to the legislature. Id at 579. The Attorney General, as the Commonwealth's chief law enforcement officer, is the appropriate party to maintain a civil action to establish an official's duty to enforce DOC regulations. Attorney General v. Sheriff of Worcester County, 382 Mass. 57 (1980).

Stevens also asserts that defendants have failed to provide a toilet in the yard, notwithstanding an order in King v. Greenblatt. Stevens misstates the situation, as the District Court was addressing the toilet issue that arose the context of a complaint from a now-former resident who had a medical problem requiring frequent toilet access.

> Funds are being sought from capital planning funds to install toilet facilities
> accessible to the yard to attempt to address the residents' complaint about
> the lack of toilet facilities in the yard. While this complaint was the subject

> of resident testimony, the records do not show any request by a resident for
> a special accommodation because of a urinary or other problem that may
> force an individual to defecate or urinate while in the yard.

King, 53 F. Supp.2d at 134.  Stevens lacks standing to raise this issue where he has not alleged

that he suffers from a similar medical condition which could warrant the same accommodation.

## F.    Count XIV: Classification

Stevens asserts that there is no classification system at the Treatment Center.  He alleges

that the Treatment Center does not operate its community access program.  PAC ¶ 169.  These

allegations are futile for several reasons.  First, civilly-committed sex offenders do not

participate in the prison classification system for the obvious reason that they are committed to a

specific facility. However, section 6A of G.L. c. 123A requires that Treatment Center inmates

"be held in the most appropriate level of security required to ensure protection of the public,

correctional staff, himself and others." The Treatment Center effectively provides a continuum of

security and privilege levels. The highest level of security within the facility is provided by the

Minimum Privilege Unit. See King v. Greenblatt, 53F. Supp.2d at 128-129. Within the general

population, there is a privilege system.  Id. at 128.  Section 6A also provides for the operation of

a community access program for persons approved by the Community Access Board. See G.L. c.

123A, § 1. Unless and until Stevens is (1) committed to the Treatment Center, and (2) is

recommended for community access by the Community Access Board, he lacks standing to

complain about his potential "classification" within the facility.

Second, there is no due process violation where inmates have no liberty interest in

classification. See Meachum v. Fano, 427 U.S. 215 (1976); Dominique v. Weld, 73 F.3d 156,

159-61 (1996) (Removing a sex offender from work release to medium security because he

refused to participate in sex offender treatment was not an "atypical and significant" deprivation).  The requested amendment would be futile.

      **G.**     **Count XVI:  Treatment Center Grievance Process.**

     Stevens alleges that the DOC defendants have violated M.G.L. c. 127, § 38E by failing to provide him with a "fair, impartial, speedy and effective grievance process." PAC §§ 181-188. However, the alleged failure to properly follow state law or regulations cannot provide the basis for a § 1983 claim.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226 (1st Cir. 1992); Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (violations of state law - even where arbitrary, capricious, or undertaken in bad faith - do not, without more, give rise to a denial of due process under the U.S. Constitution); Graham v. Connor, 490 U.S. 386 (1989) (42 U.S.C. § 1983 provides a method for vindicating federal rights elsewhere conferred and is not itself a source of substantive rights); Parratt v. Taylor, 451 U.S. at 535.  The proposed amendment is futile.

## CONCLUSION

     Where Stevens seeks to litigate claims concerning conditions at the Treatment Center that are unrelated to his complaint, the motion to amend the complaint should be DENIED.

Dated: December 13, 2004              Respectfully submitted,

                                      NANCY ANKERS WHITE
                                      Special Asst. Attorney General

                                      /s/ Richard C. McFarland
                                      Richard C. McFarland, BBO No. 542278
                                      Legal Division
                                        Department of Correction
                                        70 Franklin Street, Suite 600
                                        Boston, MA 02110
                                        (617) 727-3300, Ext. 132
                                        rcmcfarland@doc.state.ma.us

<u>CERTIFICATE OF SERVICE</u>

I, Richard C. McFarland, counsel for the defendants, hereby certify that on this 13th day of December, 2004, I caused a copy of the forgoing to be served on the plaintiff, William Stevens, pro se, by mailing one copy, postage prepaid, to his address: Massachusetts Treatment Center, 30 Administration Road, Bridgewater, Massachusetts 02324.

<u>/s/ Richard C. McFarland</u>
Richard C. McFarland