UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

WILLIAM G. STEVENS,

    Plaintiff,

v.

ROBERT HOWLAND, et al.,

    Defendants.

CIVIL ACTION NO.
04-11938-JLT

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

### INTRODUCTION

Pro Se Plaintiff, William G. Stevens, submits this memorandum in support of his motion for summary judgement. For the reasons set forth below, the Court should grant this motion.

### BACKGROUND

On September 3, 2004, plaintiff William G. Stevens, a temporarily detained resident of the Massachusetts Treatment Center (MTC), commenced this pro se action by filing his original complaint raising various claims related to his constitutional right to practice his Wiccan religion against Robert Howland, Staff Program Director of the MTC, Joseph Murphy, then the Director of Programs and Treatment of the MTC, Robert Murphy, Superintendent of the MTC, Kathleem Dennehy, Commissioner of Correction and the Massachusetts Department of Correction. On October 12, 2004, this Court issued a Memorandum and Order in which it, sua sponte, dismissed the defendant Massachusetts Department of Correction for reasons of Eleventh Amendment Immunity. Plaintiff alleged that his constitutional right to practice his religion, Wicca, had been violated by the defendants

based on events occurring at the MTC in January through July 2004. Plaintiff has sought monetary, injunctive and declaratory relief against the remaining defendants.

## FACTUAL ALLEGATIONS

On September1, 1999, Stevens pled guilty to a sexual offense and was sentenced to prison. Complaint, ¶12. On January 31, 2004, Stevens' prison sentence was completed. Complaint ¶13. On January 30, 2004, a petition to civilly commit Stevens was filed in the Barnstable Superior Court pursuant to G.L. c. 123A §12(e). Stevens was ordered temporarily detained at the MTC. Complaint, ¶14. Stevens is an adherant of the Wiccan religion, and was elected leader of the MTC Wiccan religious group on March 12, 2004. Complaint, ¶15. The MTC has recognized the Wiccan religious group and allows it to meet. Complaint, ¶16. Wiccans celebrate eight (8) holy days annually, called Sabbats, which occur on specific dates each year. Complaint, ¶17; Exhibit 1. Wiccans typically gather on nights of the full or new moons. Complaint, ¶18; Exhibit 1. These dates seldom occur at times that the Wiccan group is allowed to gather at the MTC. The Massachusetts Department of Correction has promulgated guidelines in the form of the Religious Services Handbook, which require that; "if requested Wiccans should be allowed to meet corporately and consume cake and juice to celebrate these Holy Days. Complaint, ¶19; Exhibit 2. At various times between January and July 2004, Stevens gave oral/and or written notice that the Wiccan religious group would be gathering on the dates authorized by the defendants, and would be requiring the DOC approved foods for corporate

- 3 -

Sabbat worship. These requests were denied. Complaint, ¶¶ 20, 21, 30, and 54; Exhibits 6 and 9. At various times between January and July 2004, Stevens made numerous requests, both oral and written, for additional time, space and/or materials for Wiccan corporate worship. These requests were either denied, ignored, or partially approved, usually to an inadequate degree. Complaint, ¶¶ 22, 26, and 38; Exhibits 3, 5, 10 and 11. A copy of Stevens' responses to interrogatories propounded upon him by the defendants, itemizing Wiccan religious ceremonial items and general Wiccan belief and practice has been attached to this memorandum as Exhibit 1. Most of the religious ceremonial items requested by Stevens are substantially identical to those already used by mainstream religious groups and are either currently or have previously safely been used by other Wiccan religious groups confined in the Massachusetts Department of Correction. At various times between January and July 2004, Stevens, both orally and in writting, requested that the defendants comply with their promulgated regulations and obtain accredited representitives of the Wiccan faith so that corporate worship services could be conducted at the MTC. These requests were ignored. Complaint ¶¶33, 50 and 51; Exhibits 8 and 13. A letter from the Massachusetts Department of Correction's religious Services Coordinator ordering Stevens to stop conducting Wiccan corporate worship services at the MTC is attached to this memorandum as Exhibit 2. The defendants currently provide paid accredited representitives of the Protestant, Catholic and Muslim religious faiths to provide formal and/or informal religious

- 4 -

services for their respective groups as well to handle confidential material. Complaint ¶ 53. Stevens is forced to meet in a room that is inadequate in size for the purpose used and the number of persons involved. Complaint ¶ 23. A larger frequently unused space was requested for the use of the Wiccan group by Stevens. This request was denied. Complaint ¶ 24; Exhibits 3, 4 and 10. Defendants provide daily access, frequently several times per day to meeting rooms and services for "mainstream" religious groups to conduct their activities. Complaint ¶ 39. A schedual of daily religious activities for Protestant religious groups has been attached to this Memorandum as Exhibit 3. Defendants provide Protestant, Catholic and Muslim religious groups with space and equipment to help with the conduct and administration of their religious programs. Complaint, ¶ 40. Stevens has grieved the defendants actions or lack there of. Complaint, ¶¶ 25 and 34; Exhibits 4 and 9; and has appealed these decisions ¶ 32. Stevens was harassed and retaliated against for filing grievances against the defendants. Complaint, ¶¶ 27, 28 and 29. The Affidavit of Andrew Hebert has been attached to this Memorandum as Exhibit 4 to show how defendant Howland has unnecessarily persecuted the Wiccan religious group. Stevens was informed that religious items were not purchased due to "budget issues". Complaint ¶ 45. Stevens requested copies of the Inmate Benifit Review and Program accounts under G.L. c. 66, ¶ 10. These requests were ignored. Complaint ¶¶ 46, 47, 48 and 49; Exhibit 12. For the purpose of the Complaint and this Memorandum these allegations must be taken as true.

**ARGUMENT**

Pursuant to Rule 56 (c) of the Federal Rules of Civil

- 5 -

Procedure, summary judgement is properly granted only where (1) there is "no genuine issue of material fact" in dispute and (2) "that the moving party is entitled to a judgement as a matter of law" Fed. R. Civ. P. 56 (c); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). A party moving for summary judgement bears the burden of affirmatively demonstarting the absence of a triable issue and that the moving party is entitled to judgement as amatter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing, that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial." Hodgens v. General Dynamics Corp., 144 F.3d 151, 158 (1st Cir. 1998). In deciding a motion for summary judgement, the Court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Fed. R. Civ. P. 56 (c).

1.  Plaintiff is entitled to summary judgement because there is no material fact that is in dispute.

Stevens has asseverated that the defendants have failed to accommodate his religious exercise in a variety of different ways, including denying him the same opportunities for group worship that are granted adherents of mainstream religions, witholding religious ceremonial items that are substantially identical to those that the adherents of mainstream religions are permitted, failing to provide a chaplain trained in his faith, and failing to allow him to meet for corporate Sabbat worship in compliance with guidelines that they have promulgated, all in violation of Stevens' First Amendment Right to freedom of religion as well as his rights as protected by the Religious Land Use and

Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc, and numerous state constitutional protections. The defendants have failed to allege any specific fact or facts which would establish the existance of a genuine issue <u>Hodgens</u>, at 158. As such plaintiff's motion for summary judgement must be allowed.

2.  <u>Plaintiff is entitled to judgement as a matter of law.</u>

Stevens' current confinement at the Massachusetts Treatment Center accords him the protections of RLUIPA. Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc - 1(a)(1)-(2), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." The defendants have failed to comply with Section 3's mandates. Under RLUIPA, prison regulations that substantially burden religious belief, including those that are generally applicable and facially neutral, are judged under a strict scrutiny standard, requiring prison officials, rather than the inmate, to bear the burden of proof that the regulation furthers a compelling penological interest and is the least restrictive means of satisfying this interest. As is well known from the history of constitutional law, the change that RLUIPA imposes is revolutionary, switching from a scheme of deference to one of presumptive unconstitutionality. Instead of rational, the penological interest under RLUIPA must be of the highest order; instead of focusing on the prison inmate's ability to find other

- 7 -

avenues to exercise his belief, a court is required to focus on the prison administration's choice among regulatory options; instead of placing the burden of proof on an inmate, RLUIPA throws the burden on prison officials. Cutter v. Wilkinson, 349 F.3d 257, 265 (2003)(quoting Madison v. Ritter, 240 F.Supp.2d 566, 575 (W.D.VA 2003), judgement rev'd, 355 F.3d 310 (4th Cir. 2003), cert. denied, 125 S.Ct. 2536 (U.S.2005)). In properly applying RLUIPA, courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries, see Estate of Thornton v. Caldor, 472 U.S. 703, 86 L. Ed. 2d. 557; and they must be satisfied that the Act's prescriptions are and will be administered neutrally among different faiths, see Board of Educ. of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 129 L. Ed. 2d. 546 (1994). "The 'exercise of religion' often involves not only belief and profession but the performance of... physical acts [such as] assembling with others for worship service [or] participating in the sacramental use of bread and wine...." Employment Div. Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872, 877, 108 L. Ed. 2d. 876. Section 3 covers state-run institutions - mental hospitals, prisons, and the like - in which the government exerts a degree of control unparalleled in civillian soviety and severely disabling to private religious exercise. 42 U.S.C. § 2000cc - 1(a); § 1997. RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and therefore dependent on the government's permission and accommodation for exercise of their religion. The Act does not elovate accommodations of religious observances over an institutions need to maintain order and safety.

- 8 -

It does, however, require that prison administrators not merely brandish the words "security" and "safety" and expect that their actions will automatically be deemed to be constitutionally permissable conduct. Indeed, "inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not surface...." Campos v. Coughlin, 854 F.Supp. 194, 207 (S.D.N.Y. 1994). An accommodations must be measured so that it does not override other significant interests. See Candor, 472 U.S. at 709-710. The courts should exercise caution in the measurement of an accommodation due to the fact that before enacting § 3, Congress documented, in hearings spanning three years, that often "frivolous or arbitrary" barriers impede institutionalized persons' religious exercise. See 146 Cong. Rec. S7774 S7775 (July 27, 2000) (joint statement of Senators Hatch and Kennedy on RLUIPA)("Whether from indifference, ignorance, bigotry, or lack of resources, some institutions restrict religious liberty in egregious and unnecessary ways."). While the Act adopts a "compelling interest" standard, § 2000-1(a), "context matters" in the application of that standard, see Gutter v. Bollinger, 539 U.S. 306, 327, 156 L.Ed.2d. 304. Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions and anticipated that courts would apply the Act's standard with due deference to prison administrators' experience and expertise while at the same time considering that prison administrators have long demonstrated a practiced gift for relaying folksy anecdotes in support of romanticized views of their

jobs. These exercises could be inconsequential except for the fact that the inspired folklore disseminated by correctional officials can be accorded unmerited deference, premised solely on the relevance of administrative correctional experience and professional expertise. As such plaintiff's motion for summary judgement must be allowed.

## CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that this Honorable Court **ALLOW** the plaintiff's motion for summary judgement.

7-18-06

Respectfully Submitted,
William G. Stevens, Plaintiff

_____
William G. Stevens, Pro Se
Nemansket Correctional Center
30 Administration Road
Bridgewater, MA 02324

## VERIFICATION

I, William G. Stevens, state under the pains and penalties of purjury that all of the factual allegations contained in the foregoing motion are true.

DATED: 7-18-04

_____
William G. Stevens

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing to be served upon the counsel of record for the defendants by Intra-institutional mail.

Dated: 7-19-06

_____
William G. Stevens, Pro Se
Nemansket Correctional Center
30 Administration Road
Bridgewater, MA 02324