**EXHIBIT 3**

103 CMR:    DEPARTMENT OF CORRECTION

103 CMR 471.00:    RELIGIOUS PROGRAMS AND SERVICES

Section

471.01:    Purpose
471.02:    Statutory Authorization
471.03:    Cancellation
471.04:    Applicability
471.05:    Access to Regulations
471.06:    Definitions
471.07:    Inmate Access to Religious Programs and Services
471.08:    Supervision of Inmate Religious Programs and Services
471.09:    Range of Religious Activities and Services
471.10:    Access of Visiting Clergy
471.11:    Community Participation in Inmate Religious Activities
471.12:    Access of Volunteer Chaplains
471.13:    Program Assessment and Planning
471.14:    Pre-Release Center Application
471.15:    Annual Review Date
471.16:    Severability Clause

471.01    Purpose

The purpose of 103 CMR 471.00 is to establish departmental guidelines regarding religious programs and services in the institutions of the Department of Correction. 103 CMR 471.00 is not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.

471.02    Statutory Authorization

103 CMR 471.00 is issued pursuant to M.G.L. c.124, §1 (c), (q), and c. 127, §§ 88 through 90.

471.03    Cancellation

103 CMR 471.00 cancels all previous departmental and institutional policy statements, bulletins, directives, orders, notices, rules or regulations regarding religious programs and services.

471.04    Applicability

EXHIBIT 3

103 CMR 471.00 is applicable to all employees and inmates at all state correctional institutions.

471.05   Access to Regulations

103 CMR 471.00 shall be maintained within the central policy file of the department and shall be accessible to all department employees. A copy shall also be maintained in each superintendent's central policy file and at each inmate library.

471.06   Definitions

Accredited Religious Group - A religious organization that is recognized by the Internal Revenue Service as a non-profit agency as designated for tax purposes.

Accredited Representative - Clergy authorized by the central or local governing body of a recognized religious group or denomination to represent that group or denomination in performing religious programs and services.

Approved Visiting Area - Areas so designated by the superintendent or a designee where inmates and their visitors may conduct visits.

Associate Commissioner - Associate commissioner for classification, programs and health services.

Clergy - A person ordained to perform pastoral or sacerdotal functions in a Christian church or the official of a non-Christian church.

Commissioner - Commissioner of Correction.

Community Religious Volunteer - Any individual from the community, approved by the chaplain and the superintendent or a designee, who assists the chaplain on a voluntary basis in the provision of religious programs or services in designated areas.

Department - Department of Correction.

Institution Chaplain - Member of an accredited religious group who is a paid employee of the Department of Correction for the purpose of providing religious programs, services, and pastoral overseeing of the institution.

<u>Ordain</u> - To invest officially with ministerial or priestly authority which serves to provide religious education.

<u>Program Coordinator</u> - A person designated by the Associate Commissioner as responsible for the coordination of religious services.

<u>Religious Program</u> - A program which is religious in nature and which serves to provide religious education.

<u>Religious Service</u> - Meeting which is religious in nature and provides an opportunity for worship, fellowship, or congregational participation.

<u>Shift Commander</u> - The officer who has overall responsibility for the security of the institution and the care and supervision of all inmates and custodial staff during a given tour of duty.

<u>Special Visit</u> - Any type of inmate visit which requires express authorization from the superintendent or a designee.

<u>Special Visiting Area</u> - Any area of the institution, not usually used for visiting purposes, which may be used for a particular inmate visit with the express authorization of the superintendent.

<u>Superintendent</u> - Chief administrative officer of a correctional institution.

<u>Visiting Chaplain</u> - Clergy person of an accredited religious denomination who is granted access to the institution, after consultation with an institution chaplain and with the approval of the superintendent or a designee, for a specified period of time for the purpose of providing a service which is religious in nature.

<u>Volunteer Chaplain</u> - A chaplain providing services who is not remunerated for such services. This includes clergy and lay persons.

<u>471.07</u>   <u>Inmate Access to Religious Programs and Services</u>

(1) <u>General</u>. The rights of inmates to practice their religious beliefs, or to confer with the clergy person of an accredited religious group shall not be abridged,

provided that these activities do not threaten the safety, security and orderly running of the institution. Specifically, subject to subsequent provisions of this policy, the following shall apply:

    (a) No inmate shall be denied the exercise of religious beliefs and the liberty of worship according to the dictates of their conscience;

    (b) No inmate shall be required or expected to attend any religious programs or services, or to adhere to any religious belief.

    (c) No inmate shall be denied personal contact with accredited representatives of their faith;

    (d) All recognized inmate religious groups shall have equal access to the physical space, equipment and services which the institution normally provides for religious purposes.

(2) <u>Security</u>. No portion of 103 CMR 471.00 shall be interpreted or implemented in such a way as to threaten the security, safety or well-being of the institution, its visitors, inmates or staff.

(3) <u>Limitation of Access.</u> The superintendent or designee may limit religious programs, practices or services if such would threaten the security, safety or well-being of the institution, its visitors, inmates or staff, and where there are specific facts to substantiate the threat. Superintendents with questions regarding the limitation of religious programs, practices or services should contact the associate commissioner. All limitations of religious programs, practices and services will be documented via a letter to the associate commissioner.

(4) <u>Cancellation of Programs and Services</u>. The superintendent or designee shall have the right, without notice, to cancel, postpone, restrict, or limit an inmate's participation in any religious program, practice or service. This responsibility will be exercised only if the religious activity, or the inmate's participation in the activity, might jeopardize the security, safety or well-being of the institution, its visitors, inmates or staff. All cancellations, postponements or restrictions will be

        documented by the shift commander, and written notification and explanation will be given to the chaplain.

471.08    Supervision of Inmate Religious Programs and Services

        (1) General. Inmate services and religious programs will be planned, supervised and directed by institution chaplains or by staff members connected with the chaplain's office who are charged by the superintendent with this responsibility.

        (2) Institution Chaplain. The services of an institution chaplain shall be made available upon request at all institutions. The chaplain shall work under the direction of the program coordinator as well as the director of treatment or program director when on site at an institution. The program coordinator shall ensure that quality assurance standards are met by all chaplains.

        (3) Qualifications for Selecting a Chaplain. The primary criterion in selecting a chaplain shall be the ability to meet the spiritual needs of prisoners. Indicators of that ability include seminary training, pastoral experience, prior experience in chaplaincy, clinical pastoral experience, counseling experience, and the ability to converse with, encourage and guide people who have spiritual and psychological needs. All candidates for chaplain positions must have one unit of clinical pastoral education or an equivalent training program. In order to establish the respect and confidence of the people the chaplain will be ministering, it is expected that a chaplain will bring to this ministry a sincere belief in the particular faith.

        (4) Ecclesiastical Endorsement. The Jewish chaplain will have the endorsement of a rabbinical chaplaincy commission. The Catholic chaplain will have the endorsement of the Cardinal. The Protestant chaplain will have the endorsement of his/her local church and the appropriate ecclesiastical authority. The Muslim Chaplain will have the endorsement of the Imam of his local Masjid.

        (5) Posting of Chaplain Positions. When a vacancy exists in any chaplaincy, postings will be made in accordance with Department policy. All postings will be approved by the associate commissioner.

(6) <u>Appointment of Chaplains</u>. When a vacancy exists in any chaplaincy, whether part-time or full-time, the following procedures will govern the selection of a chaplain. An interview committee will be coordinated by the program coordinator consisting of two members of the advisory committee on chaplains in state institutions, one institution chaplain, the program coordinator, and the superintendent of the institution or designee. In all possible cases, the institution chaplain should be at the institution where the vacancy exists. At least one member of the committee must be an accredited representative of the religious group for which the chaplain is being hired. All resumes received in application for a vacant position will be reviewed by the program coordinator.

(7) <u>Duties and Responsibilities.</u> The chaplain shall have physical access to all areas of the institution and be responsible for:

    (a) Planning, developing, coordinating and implementing inmate religious programs and services.

    (b) Establishing schedules, calendars, postings or other methods of informing inmates and staff of existing and planned religious programs and services. Programs will be planned in conjunction with the director of treatment /program representative.

    (c) Providing supervision to all religious programs including, but not limited to:

        1. recruiting, screening and orienting prospective volunteers for religious programs and services;

        2. utilizing volunteer chaplains.

    (d) Providing pastoral counseling and guidance to the inmate population.

    (e) Providing religious services, programs and activities in designated chapels to inmates who have access to those areas; and individualized services, programs and activities to inmates in segregated areas.

 (f) Consulting with and advising professional staff on religious/spiritual problems that occur with the inmate population.

 (g) Submitting an annual budget request to the superintendent or designee.

 (h) Working with the program coordinator to develop resources and to expand or otherwise improve religious services.

 (i) Attending chaplain meetings and professional training as developed by the program coordinator. Attending regular institution treatment meetings.

 (j) Attending professional training, seminars, or retreats mandated by the religious group with which the chaplain is affiliated, approved by the program coordinator.

 (k) Assisting inmates in the development of discharge plans to meet their religious and spiritual needs.

 (l) Providing religious services for the inmate while the inmate is incarcerated at their assigned facility. Once an inmate is transferred or released, the chaplain should no longer be providing services.

 (m) Obtaining the written authorization of the superintendent or designee prior to contacting an inmate's family members.

471.09 Range of Religious Activities and Services

 (1) General Policy. Each facility should make reasonable efforts to establish and maintain religious activities and services for all inmates who are affiliated, or wish to become affiliated, with recognized religious denominations or groups.

 (2) Clergy Services. The superintendent, or designee, and the institution chaplains should make reasonable efforts to insure that an accredited representative of an inmate's religious faith is available to provide formal or informal services to inmates who so request wherever the inmate is confined within the institution.

 (3) Religious Groups. Recognized religious groups or

denominations will include, but not necessarily be limited to: Catholic, Protestant, Jewish, and Muslim. An inmate who is affiliated with and wishes to participate in a recognized religious group not currently functioning at an institution should inform the director of treatment's office. The treatment director, in consultation with the institution chaplains and other appropriate staff, shall make reasonable efforts to arrange for the requested services.

(4) Religious Activities. Each religious group is encouraged to plan its own activities, using the appropriate community and institution resources. Religious activities include, but are not necessarily limited to: worship services, religious instruction, reading and study, religious discussion groups, and pastoral counseling.

(5) Special Diets.

    (a) Inmates whose religion places restrictions on diets will be permitted access to a special diet. Requests for such diets should be initiated by interested inmates to the chaplain's office, or to the superintendent where no full time chaplain position exists.

    (b) Where religious holidays specify particular dietary requirements (e.g., Passover, month of Ramadan), special arrangements should be made so that inmates shall be able to adhere to their religious beliefs.

(6) Facilities for Services. Adequate space and equipment shall be provided for the conduct and administration of religious programs. Each institution shall make non-inmate clerical staff available to assist in handling confidential material. Accredited religions shall be provided a place for services. Based on security needs, the size of groups at services may be restricted if a determination is made of such a need by the superintendent or designee.

(7) Scheduling. To keep inmates and staff informed of religious program opportunities, institution chaplains will post religious program and service schedules in appropriate housing units.

(8) Special Services. With approval of the

superintendent, special religious services may be scheduled with visitors and inmates.

(9) <u>Religious publications</u>. Inmates may have access to a reasonable number of religious publications. (See 103 CMR 481.00 <u>MAIL</u>.)

471.10   Access of Visiting Clergy

(1) <u>General</u>. Clergy of accredited religious groups shall be allowed access to the correctional facility under the conditions set forth in M.G.L. c.127, s. 36A and 103 CMR 486.00, pertaining to attorney access.

(2) <u>Normal and Special Visits.</u> Clergy visits shall take place during normal visiting hours. However, under extenuating circumstances, special visits with clergy may be permitted for any reasonable purpose with the authorization of the superintendent or designee.

(3) <u>Special Visiting Areas</u>. Clergy visits shall normally be held in approved visiting areas. However, if these areas do not provide the degree of privacy which the clergy member deems appropriate for the purpose of the visit, then the clergy member may request that a special visiting area be provided. The superintendent of the institution or designee may identify any area of the institution as a special visiting area for clergy visits.

(4) <u>Institution Access.</u> Clergy members shall be expected to remain within approved visiting areas whenever they are visiting inmates. However, clergy members will be permitted access to all other areas of the institution used by the inmates (including living quarters and work areas), for any reasonable purpose, provided that the clergy member first obtains authorization from the superintendent or designee.

(5) Visiting clergy may be permitted to meet with more than one inmate where the following procedure is utilized:

   (a) Any inquiries regarding pastoral visits will be referred to an institution chaplain.

   (b) The institution chaplain will verify, on a case-by-case basis, the status of the

        inquiring clergy. After verification is made, the chaplain will notify the director of treatment.

    (c) Clergy may then schedule visits with the inmates.

471.11    Community Participation in Inmate Religious Activities

(1) General. Each institution will actively encourage clergy and other members of community religious organizations to become involved in the inmate religious activities.

(2) Community Religious Volunteers. Any member of the community who is interested in acting as a volunteer in the inmate religious program shall initially be directed to the chaplain. Each person must be approved as a volunteer. (See 103 CMR 485.00 VOLUNTEERS AND VOLUNTEER PROGRAMS.)

471.12    Access of Volunteer Chaplains

Volunteer chaplains' access shall be limited to the needs of the religious program or activity in which they are participating.

471.13    Programs Assessment and Planning

(1) General. Each institution shall monitor its religious programs on an on-going basis and conduct periodic assessments.

(2) Program Monitoring. The superintendent or a designee shall develop a monitoring system that provides an on-going review of all religious activities and services and be responsible for maintaining all records related to program monitoring. The monitoring system shall include:

    (a) The estimated number of inmates affiliated with each religious group or denomination.

    (b) Results of meetings with other institution staff and their suggestions on existing or proposed religious programs and services.

    (c) Individual program evaluations.

    (3) <u>Quarterly and Annual Reports</u>. The information gathered through the monitoring process shall be incorporated into the institution quarterly *and annual* reports. It is the responsibility of the superintendent to ensure that these reports are forwarded to the associate commissioner.(See 103 DOC 111.00: <u>MANAGEMENT ANALYSIS, SURVEY AND EVALUATION</u>.)

471.14  Pre-Release Center Application

    (1) <u>General.</u> Inmates of pre-release centers should use program related activity time to participate in community religious activities.

    (2) <u>Cadre</u>. Superintendents of pre-release centers who have cadre positions shall make special arrangements to meet these inmates' religious needs in accordance with established department policy and statutory requirements.

471.15  Annual Review Date

    103 CMR 471.00 shall be reviewed at least annually from the effective date by the Commissioner or designee. The party or parties conducting the review shall develop a memorandum to the Commissioner with a copy to the central policy file indicating revisions, additions, or deletions which shall be included for the Commissioner's written approval.

471.16  Severability

    If any article, section, subsection, sentence, clause or phrase of 103 CMR 471.00 is for any reason held to be unconstitutional, contrary to statute, in excess of the authority of the Commissioner or otherwise inoperative, such decision will not affect the validity of any other article, section, subsection, sentence, clause, or phrase of 103 CMR 471.00.

  **REGULATORY AUTHORITY** 103 CMR 471.00: M.G.L. c. 124 § 1 (c), (q), and c. 127, § §. 88 through 90.

## Standard Operating Procedures
### Special Diets

I. These procedures should be followed for Kosher and Alternative/Vegetarian Diet Requests.

II. Per 103 CMR 471 inmates should make their special diet requests in writing to a chaplain, utilizing Attachment A, or in cases where there is not a chaplain of their faith, to the superintendent of the institution where they are housed.

III. When a chaplain receives a special diet request, he/she should forward it to the superintendent or designee.

IV. The superintendent or designee will review all special diet requests received.

V. If the inmate requests a special diet that is documented in the Religious Services Handbook, that diet should be approved, utilizing Attachment B.

VI. If the inmate requests a special diet that is <u>not</u> documented in the Religious Services Handbook, that inmate should be given an Inmate Religious Services Request Form to be completed and forwarded to the superintendent. The superintendent shall then forward the request form, with his/her recommendation, to the Religious Services Review Committee for a formal decision, in accordance with procedures outlined in the Religious Services Handbook.

VII. Once a special diet is approved, the superintendent or designee shall notify the food services director to add the inmate on the appropriate special diet list, either kosher or vegetarian.

VIII. Special diet lists shall be reviewed, updated and forwarded to the food services director on a monthly basis.

IX. Inmates on special diets shall show their identification card and sign for their diet at every meal.

X. When a staff member witnesses an inmate who is on the special diet list accessing a meal from the mainline menu, an Incident Report shall be written and forwarded to the superintendent or designee.

XI.  The superintendent or designee will track all inmates on a special diet and when they receive three incident reports within a thirty day period stating that an inmate accessed meals from the mainline menu, that inmate will be notified that he/she has been removed from the special diet list, utilizing Attachment C.

XII. Inmates removed from the special diet in this manner may reapply in writing for the diet after sixty days.

XIII. If an inmate is removed from the special diet as described above, **twice** within a twelve-month period, he/she will be notified that he/she is no longer eligible to receive the diet, utilizing Attachment D.

XIV. Special diets should continue without break upon transfer to another facility. An intrasystem transfer form, Attachment E, stating the type of diet the inmate is receiving, should be completed by the superintendent or designee and forwarded to the receiving facility.

Attachment A

## Massachusetts Department of Correction
**Special Diet Request Form**

Institution: _____  Date of Request _____/_____/_____

Inmate Name: _____  Commitment Number:_____

I hereby request authorization to receive a special diet (Kosher/Vegetarian). I agree to comply with the special diet requirements. I understand that, if I am observed accessing a meal from the mainline menu, an Incident Report will be written. I understand that three Incident Reports of this nature within a thirty (30) day period will lead to my removal from the special diet list. If I am removed under these circumstances, I may only reapply for a special diet in writing to the chaplain, after sixty (60) days. Repeated violations, which consist of two removals from the special diet list in a twelve-month period, will result in my being deemed ineligible for a special diet. I further understand that the same conditions for reinstatement will apply if I voluntarily withdraw from the special diet for any reason.

I understand that I must provide a written request (in the space below) stating what my religion is and what dietary restrictions apply to my religion that require my placement on the special diet list, in accordance with 103 CMR 471.09(5).

Religion: _____

Clearly explain what dietary restrictions require your placement on the special diet list:

_____
_____
_____
_____
_____
_____
_____

_____
Signature of Inmate


_____
Signature of Superintendent or Superintendent's Designee          Date

Attachment B

Date:

Inmate Name:

Commitment #:

From:

Please be advised that your request for a special diet has been approved and you will be added to the Kosher/Vegetarian list effective immediately.  Please be aware that, if for any reason you are observed accessing a meal from the mainline menu, an Incident Report will be written.  Three incident reports of this nature within a thirty-day period will lead to your removal from the special diet list.  If you are removed under these circumstances, you may reapply for a special diet in writing to the chaplain, after sixty days.  Two of these removals in a twelve-month period will result in your being deemed ineligible for a special diet.

Thank you.

Attachment C

Date:

Inmate Name:

Commitment #:

From:

Please be advised that you have been observed accessing a meal from the mainline menu three times within the past thirty days. As you are aware, you will now be removed from the special diet list.  You are eligible to reapply for a special diet on (DATE). Please be aware that another removal of this type within a twelve-month period will result in your being deemed ineligible for a special diet.

Thank you.

Attachment D

Date:

Inmate Name:

Commitment #:

From:

Please be advised that you have been observed accessing a meal from the mainline menu three times within the past thirty days. As you are aware, you will now be removed from the special diet list. As this is your second removal of this type in a twelve-month period, you are now deemed ineligible to receive a special diet.

Thank you.

Attachment E

**Special Diet**
**Intra-system Transfer Form**

To: _____ Date: _____
     (Superintendent / Institution)

Inmate Name:_____ Commitment Number:_____

Institution:_____

Religion:_____

The above named inmate is currently receiving a Kosher/Vegetarian Diet. Please ensure that this diet continues upon transfer without break.

❏ This inmate has received one removal from his/her special diet within the past twelve months dated: _____.

❏ This inmate has received one / two incident report(s) in the past thirty days due to receiving a meal off the mainline menu the date(s) of these incident reports are:

   _____.

If you have questions, please contact _____
                                       (Superintendent or Designee)

Thank you.