**EXHIBIT 5**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

WILLIAM STEVENS,

      Plaintiff,

    v.                             Civil Action No. 04-11938 JLT

ROBERT HOWLAND, <u>et al.</u>,

      Defendants.

### AFFIDAVIT OF WILLIAM MILHOMME

I, William Milhomme, do on oath depose and state:

1.    I am an employee of the Massachusetts Department of Correction ("DOC") and presently serve as the Director of Volunteer Services for the Department's Program Services Division. I have held this position since July, 2005.

2.    As the Director of Volunteer Services, I am responsible for the supervision of the volunteer programs within the DOC. One of my primary duties is to work with community groups in order to look for individuals willing to work as volunteers in a DOC facility in various capacities. I spend a great deal of my time working with community religious organizations and groups in an attempt to bring in volunteers to work with the various inmate religious groups.

3.    The DOC recognizes 15 religions, including Buddhist, Christian Scientists, Greek Orthodox, Hare Krishnas, Muslims, Jehovahs' Witnesses, Jews, Mormons, Native Americans, Protestants, Rastafarians, Quakers, Roman Catholics, Scientologists and Wiccans. The DOC provides chaplains who are Catholic, Muslim, Protestant and Jewish for many of its prisons and relies upon community volunteers to work with inmates who belong to the other religions.

4.    Presently, there are no Wicca volunteers working in any DOC facility, but I am working to change that situation. As part of my efforts to bring volunteers from community religious organizations into the prisons, I have spent a considerable amount of time searching for

**EXHIBIT**
*5*

volunteers from the Wicca community to work with inmates in DOC facilities. Based on my efforts, I have learned that, unlike established mainstream religions, the Wicca community does not maintain a national organization, but consists of small local groups called covens. Fortunately, as a result of my prior employment with the Office of Massachusetts Secretary of State, Field Archivist/Grants Manager with the Office of Massachusetts Secretary of State, I have developed a number of contacts within the Wicca community in this state and surrounding states. Presently, after considerable effort, I have made contact with covens in Connecticut (Covenant of Goddess), and Marlborough, Massachusetts (Society of Elder Faith), and Williamsburg, Massachusetts (EarthSpirit), and one in Duxbury, Massachusetts (First Church of Wicca). The coven in Duxbury, Massachusetts is not far from the Massachusetts Treatment Center and I have discussed with the coven leaders the possibility that they could provide Wicca volunteers to work with the Wiccan groups in DOC facilities located in Southeastern Massachusetts. Recently, I was advised by the Duxbury coven that while there is interest among their members in volunteering at a DOC facility, they are presently not able to participate in the DOC volunteering program and will contact me in the future when they are ready to participate.

4.      Despite the difficulty in locating Wicca covens in Massachusetts and neighboring states that are willing to provide volunteers, I will continue in my efforts to locate Wicca volunteers willing to work with Wiccan groups in DOC facilities, including the Treatment Center. I remain hopeful that volunteers from the Wicca community willing to work with incarcerated individuals will be located.

Signed under the pains and penalties of perjury this 29th day of August, 2006.

William Milhomme

2

**EXHIBIT  6**

103 CMR: Department of Correction

103 CMR 403.00   INMATE PROPERTY POLICY

SECTION

403.01:   Purpose
403.02:   Statutory Authorization
403.03:   Cancellation
403.04:   Applicability
403.05:   Access to Regulations
403.06:   Definitions
403.07:   Property Storage Area
403.08:   Appointment and Duties of the Institution Property Officer
403.09:   Approved Property for Inmates Being Transported
403.10:   Approved Inmate Property By Security Levels
403.11:   Additional Property Authorized for Retention by Inmates
403.12:   Responsibility for Property Retained by Inmates
403.13:   Incoming Inmate Property
403.14:   Disposal of Inmate Property
403.15:   Seized Inmate Property
403.16:   Long Term Storage of Inmate Property
403.17:   Transfer or Release of Inmate Property
403.18:   Property of Escapees or Deceased Inmates
403.19:   Disposal of Unclaimed Inmate Property
403.20:   Liability for Loss, Damage or Destruction of Inmate Property
403.21:   Property Transactions Involving Inmates
403.22:   Time Limits
403.23:   Emergencies
403.24:   Staff Responsibilities
403.25:   Annual Review Date
403.26:   Severability Clause

### 403.01:  Purpose

The purpose of 103 CMR 403.00 is to establish regulations governing the receipt, transfer, storage, maintenance, release and disposal of the property of inmates confined in state correctional institutions.   103 CMR 403.00 is not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.

### 403.02: Statutory Authorization

103 CMR 403.00 is promulgated pursuant to M.G.L. c. 124, §§1(b), (c) and (q) and M.G.L. c. 127, §§3, 96A and 96B.

4/27/01

403-1

EXHIBIT

6

103 CMR: Department of Correction

### 403.03:  Cancellation

103 CMR 403.00 cancels all previous departmental or institutional policy statements, bulletins, directives, orders, notices, rules, regulations or standard operating procedures regarding inmate property to the extent that they are inconsistent with 103 CMR 403.00.  The April 12, 1991, standard operating procedures and any amendments thereto, including the 103 CMR 403.12 grandfather clause, are hereby specifically cancelled as inconsistent with 103 CMR 403.00.

### 403.04:  Applicability

103 CMR 403.00 is applicable to all inmates, whether sentenced or awaiting trial, incarcerated at state correctional institutions with the exception of Bridgewater State Hospital excluding the permanent work force unit, Lemuel Shattuck Correctional Unit, and the Addiction Center at Southeastern Correction Center.

### 403.05:  Access to Regulations

103 CMR 403.000 shall be maintained within the Departmental Policy Manual, in each Superintendent's Central Policy File and in each inmate library.

### 403.06:  Definitions

Contraband - any item(s) not approved for retention by an inmate at an institution.

Ditty Bag- for the purposes of 103 CMR 403.00 shall be a bag which may contain the items outlined in section 103 CMR 403.09(1)(a) thru (m) sent along in the same vehicle as the inmate being transported.

Inventory - the record kept by the property officer of any and all property of an inmate.

Living Quarters - the room, cell, dormitory or other area of any institution where an inmate resides.

Property - any and all items retained by an inmate which are approved for retention by the inmate in his living quarters, temporarily stored by the institution as contraband, or in long term storage.

103 CMR: Department of Correction

<u>Property Committee</u> - a group of department managers designated by the Commissioner who review recommendations for additional inmate property in accordance with 103 CMR 403.00 for approval by the Commissioner.

<u>Property Storage Area</u> - a designated area of an institution where inmate property is stored.

<u>Security Levels</u> - a combination of the nature and number of physical design barriers available to prevent escape and control inmate behavior, along with the degree of staff supervision necessary to ensure adequate control.

<u>State</u> - clothing permitted under 103 CMR 403.10: *Approved Inmate Property by Security Level*, which is provided to the inmate by the institution.  The number of clothing items may be different than the authorized number of items permitted inmates at other security levels.

<u>Transient Inmate</u> - any inmate whose security classification has yet to be determined or who has not been assigned to a permanent housing location.

**403.07:  Property Storage Area**

Each institution shall maintain a secure inmate property storage area.  Only the Superintendent or his designee and the property officer shall have access to this area unless additional personnel are specifically authorized by the Superintendent or a designee.

**403.08:  Appointment and Duties of the Institution Property Officer**

The Superintendent at each institution shall appoint a property officer who shall be responsible to maintain inventories and records of all inmate property.

**403.09:  Approved Property for Inmates Being Transported**

(1)  Inmates being transferred shall be allowed to enter facilities with the following items in a ditty bag;
    (a)  seven pairs of under shorts *
    (b)  seven pairs of socks *
    (c)  one pair of pants (except level 6)
    (d)  one shirt (except level 6)
    (e)  one religious book

103 CMR: Department of Correction

   (f)  basic toiletries
   (g)  physician ordered eyeglasses, dentures, orthopedic or prosthetic device(s)
   (h)  not more than one cubic foot of legal documents
   (i)  one wedding band and/or one religious medal with chain
   (j)  medic alert bracelet/chain and any other medically prescribed item
   (k)  female inmates shall also be allowed seven undershirts and seven bras *
   (l)  inmates being transported to the Boot Camp as a return to higher security shall be allowed to carry their Walkman in their ditty bags
   (m)  one padlock

\*   This is not required issue and is for property purposes only. Please refer to 103 DOC 755 for minimum institutional clothing issue.

(2)  Transient inmates may retain the clothing worn during transportation so long as it meets security level property guidelines of the receiving institution.

## 403.10:  Approved Inmate Property by Security Level

(1)  All inmates shall be authorized to access the following items.

   (a)  state issued sheets, blanket and pillow case;
   (b)  state issued towel and face cloth;
   (c)  state issued bar of soap;
   (d)  one set of clothing to include underwear, socks, shoes, shirt, pants, jumpsuit or dress (for females    only);

   (e)  physician ordered eyeglasses, dentures, orthopedic or prosthetic device(s);
   (f)  state issued pencil and paper;
   (g)  not more than one cubic foot of legal documents, such as appeals, writs, complaints, transcripts;
   (h)  a religious book;
   (i)  not more than one cubic foot of personal letters, photographs and newspaper clippings;
   (j)  court clothes, as needed for scheduled court appearances.

(2)  Certain toiletry items such as razors or combs shall be made available for use at specified times.

(3)  Any item available for purchase at the institutional inmate

103 CMR: Department of Correction

canteen or through approved vendors shall not be authorized to enter via an inmate property permission slip.

(4)   The following is a master list of items approved for retention by inmates in general population in accordance with their security level.  This is not required issue and is for property purposes only.  Please refer to 103 DOC 755 for minimum institutional clothing issue.  Unless an inmate is transient, his security level is the same as the institution in which he is housed.

| | TRANSIENT | BOOT CAMP | 6 | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|---|---|---|
| **APPLIANCES/ACCESSORIES** | | | | | | | | |
| (1) T.V. 13" * | | | X | X | X | X | X | X |
| (1) AM/FM radio * | | | X | X | X | X | X | X |
| (1) Fan * | | | X | X | X | X | X | X |
| (1) Hot pot * | | | | X | X | X | X | X |
| (2) Sets Headphones * | | | X | X | X | X | X | X |
| (1)Walkman * (Boot Camp returns to higher security only) | X | | X | X | X | X | X | X |
| Musical Instrument-program approved | | | | X | X | X | X | X |
| (1) Typewriter (no memory) | | | X | X | X | X | X | X |
| (1) Extension Cord (max 6') | | | | X | X | X | X | X |
| (1) Hair dryer (hand held) | | | | | | | X | X |
| (1) Curling iron (female inmates only) | | | | | | | | X |
| **JEWELRY/total value not to exceed $50** | | | | | | | | |
| (1) Wedding Ring | X | X | X | X | X | X | X | X |
| (1) Watch | X | | | X | X | X | X | X |
| Medic Alert Medal/Bracelet | X | X | X | X | X | X | X | X |
| **MISCELLANEOUS** | | | | | | | | |
| (1) Mirror 5x7 max size | X | | X | X | X | X | X | X |
| Paper/Stamps/Pens/Pencils | X | X | X | X | X | X | X | X |
| Weight lifting Belt/Gloves | | | belt only | belt only | X | X | X | |
| Speed Bag Gloves | | | | | | X | X | X |
| Books/Mags/Newspapers(10 max) Does not include books for Temporary use in authorized educational programs) | RELIGIOUS ONLY | (1) RELIGIOUS ONLY | X | X | X | X | X | X |
| Letters/Photos/News clippings | X | X | X | X | X | X | X | X |
| Legal Documents | X | X | X | X | X | X | X | X |
| Toiletries (15 max) | X | X | X | X | X | X | X | X |
| (3) Table Games | | | X | X | X | X | X | X |
| (2) Locks ** | X | | X | X | X | X | X | X |
| Eyeglasses/Sunglasses | X | X | X | X | X | X | X | X |

4/27/01

103 CMR: Department of Correction

| | TRANSIENT | BOOT CAMP | 6 | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|---|---|---|
| | | | (eyeglasses only) | | | | | |
| (1) Wallet | X | | X | X | X | X | X | X |
| (1) ea. Cup/Bowl | | | X | X | X | X | X | X |
| (1) Alarm Clock | | | | | | X | X | X |
| Sheets/Towels/Face cloth (State issue) | X | X | X | X | X | X | X | X |
| Blanket/Pillow (state issue) | X | X | X | X | X | X | X | X |
| | TRANSIENT | BOOT CAMP | 6 | 5 | 4 | 3 | 2 | 1 |
| (1) Bicycle/Bicycle Lock/Bicycle Helmet | | | | | | | X | X |
| (1) Umbrella | | | | | | | X | X |
| (1) Book Bag | | | | | | | X | X |
| (1) Sewing Kit | | | | X | X | X | X | X |
| (1) Can Opener | X | | X | X | X | X | X | X |
| (1) Toe Nail Clipper (no file allowed) | | X | | X | X | X | X | X |
| (1) Nail Clipper (no file allowed) | | X | X | X | X | X | X | X |
| CLOTHING | | | | | | | | |
| (2) Suits/Ties/Sportcoat | | | | | | | X | X |
| (5) Trousers | 2 pr | (4) utility pants | STATE(2) | X | X | X | X | X |
| (5) Shirts | 2 | (2) long sleeved (2) short sleeved | STATE(2) | X | X | X | 10 | 10 |
| (10) ea. Underwear/T-Shirt/Socks | 7 PR | 4 PR | X | X | X | X | 14 | 14 |
| (10) Bras (female only-no underwire) or Undershirts | 7 | | X | X | X | X | 14 | 14 |
| (2) ea. Sweatshirt/Sweatpants | 1 | X Hooded sweatshirts( no strings allowed | X | X | X | X | X | X |
| (2) Hats | 1 | (1 utility & 1 stocking) | STATE (1) | X | X | X | X | X |
| (2) pr. Gloves | 1 | 1 | X | X | X | X | X | X |
| (2) pr. Gym Shorts | 1 | X | X | X | X | X | X | X |
| (2) Pajama/(1) Bathrobe | 1 EA. | | 1 bathrobe | X | X | X | X | X |
| (2) Coats | 1 | X | STATE(1) | X | X | X | X | X |
| (2) Sweaters | | | X | X | X | X | X | X |
| (2) pr Thermals | | X | | X | X | X | X | X |
| (5) Handkerchiefs | 2 | | X | X | X | X | X | X |
| (1) Bathing Suit | | | | | | | X | X |
| (5) pr. Footwear | 2 PR | 3 PR | 3 PR | X | X | X | X | X |
| (2) ea Belts/Buckles | 1 EA. | 1 EA. | | X | X | X | X | X |
| (5) Work Uniforms (Program approved) | | | | | | | X | X |

\*     Refers to tamper proof seals which shall be installed on all items when practical upon introduction into an institution after they have been searched for contraband. Anything found to be concealed shall be considered to be contraband and shall be

103 CMR: Department of Correction

disposed of according to 103 CMR 403.14. An institution may re-open and re-seal any item at the discretion of the
Superintendent. The Property Officer shall be responsible for affixing tamper proof seals. Institution Property Officers shall
be required to permanently mark property, whenever its value may exceed $50.00 with the identification number assigned to
the inmate. The item and marked number shall be recorded on the inmate's property inventory. 103 CMR 403.10(5) through
(9) is a description of the articles stated in 103 CMR 403.10(4) with additional restrictions noted.

**    A superintendent may restrict the number of locks depending on available storage compartments. If a facility provides only
one locker (footlocker, stand-up, etc.), it may restrict inmates to only one lock.

(5) <u>Appliances/Accessories-</u>  Authorized  inmates  may  obtain
televisions, radios and fans, hot pots, headphones and Walkman via
institutional canteen purchase in accordance with the designated
security level.  The utilization of these items may be restricted in
certain living quarters by the Superintendent.

    (a)  <u>Televisions</u>.  The television set, black and white or
color, must be a small portable type not larger than 13
inches.  The power input of the set must not exceed two
amperes or 200 watts.  Speakers shall not be permitted.

    (b)  <u>Radios</u>.  Radios may have AM and/or FM and must have AC
and/or DC capability.  Speakers shall not be permitted.
Cassette players or recorders are not allowed.  Maximum
size of the radio is 13" X 10" X 5".  Radio/Television
combination units must not be larger than 13".  Units
with speakers or remote control devices are not
permitted.  All electrical wiring must be factory
assembled and remain intact.  Units must be equipped and
used with an earphone jack, headphones or earplugs.

    (c)  <u>Fans</u>.  Authorized inmates shall be allowed to have one
fan in their possession.  Maximum blade size is 12"
length.  Blades must be plastic and enclosed in a plastic
frame.  Table model only, plastic stand only.  All
electrical wiring must be factory assembled and intact.

    (d)  <u>Hot Pots</u>.  An inmate may possess a maximum of one hot
pot.  They are to be plastic only, U.L. approved and have
a maximum capacity of six cups.  All wiring must be
intact and not spliced.

    (e)  <u>Walkman</u>.  Authorized inmates may possess one walkman type
AM/FM radio.  Walkmans with cassette and/or recording
buttons shall not be permitted.

    (f)  <u>Headphones</u>.  Authorized inmates may possess two
headphones with a maximum speaker size of two inches or
smaller and may not be altered in any way.

4/27/01                                                          403-7

103 CMR: Department of Correction

(g) <u>Musical Instruments.</u>   Musical instruments may be authorized for retention by inmates for the purpose of participating in an existing, approved program.  Types, size, and other restrictions shall be determined on an individual basis and in accordance with program needs. Musical instruments must be mailed out or retrieved via the disposal procedure upon an inmate's transfer termination/completion of the program.  An inmate may possess only one instrument at any given time.  Storage of the instrument will be at the discretion of the Superintendent.

(h) <u>Typewriters.</u>  Inmates shall be allowed to retain one standard (AC only) typewriter (electric or manual) and up to five typewriter ribbons in their possession. Typewriters shall not have a memory feature or text storing capacity.  A spelling feature may be allowed if changes cannot be programmed.  Separate printers or other attachments are not permitted.  Typewriters shall be engraved with the inmate's commitment number for identification purposes.

(i) <u>Extension Cords</u>.  Authorized inmates may possess one extension cord, all wiring must be undamaged.  Maximum length of the cord shall be 6 feet in length, must be U.L. approved heavy duty and contain no more than a four outlet receptacle.

(6) <u>Jewelry</u> - value of each item shall not be in excess of $50.00.

(a) <u>Wedding Band</u> - married inmates may possess a maximum of one (1) wedding band.  The band shall not exceed 1/8" at its thickest point.  Non-traditional wedding bands that contain gemstones are allowed provided that the stone is embedded in the surface of the ring.  Total thickness of the band setting and gem or stone mounted on the setting shall not exceed 3/16", total width of the band shall not exceed 3/8".

(b) <u>Watch</u> - inmates may possess one watch with time and date functions only.  Double-stitched bands, alarm or beeper functions are not allowed;

(c) <u>Medical Alert Medal/Bracelet/Necklace</u> - an inmate may possess medical alert medal(s) as specified by medical personnel. Inmate's name and commitment number shall be engraved on the medical alert bracelet/necklace.

103 CMR: Department of Correction

(d) All other items not mentioned in 103 CMR 403.10(6)(a) through (c) such as, rings, studs or other body jewelry which is affixed to any part of an inmate shall be considered a security issue and shall not be authorized for retention by an inmate.

(7) <u>Miscellaneous Articles</u>

(a) <u>Mirror</u> - Authorized inmates shall be permitted to possess one hand held mirror. The mirror shall be no larger than 5" x 7" framed in plastic only.

(b) <u>Paper/Stamps/Pencils/Pens</u> - an inmate may possess a maximum of 100 sheets of paper or one tablet, a maximum of 50 stamps and a maximum total of ten pens and pencils. Pens must be felt tip or ballpoint with plastic fillers.

(c) <u>Weight lifting Belts/Gloves</u> - Authorized inmates may possess one weight lifting belt and one pair of weight lifting gloves. Weight lifting gloves are not allowed in security levels 4, 5 and 6 facilities. Belt must be single stitched and the gloves may not have a metal piece inside.

(d) <u>Books/Magazines/Newspapers</u> - Authorized inmates may possess a maximum of ten books, magazines and newspapers. All publications must come directly from the publisher or a pre-approved distributor or book club. The property committee shall be responsible for pre-approval. This does not include books for temporary use in authorized educational programs. After completion of an authorized course the inmate will be required to dispose of all books in excess on ten.

(e) <u>Personal Letters/Photographs/News Clippings</u> - an inmate may possess one cubic foot of personal letters, photos and clippings.

(f) <u>Legal Documents</u> - an inmate may possess a maximum of one cubic foot of legal documents or audiocassettes containing legal material in their assigned living quarters. If a written request is approved by the Superintendent, authorization to store legal material

103 CMR: Department of Correction

exceeding the one cubic foot limit may be obtained. Any authorized excess documents shall be stored in a predetermined storage area accessible to the inmate, not in the inmate living quarters.

(g) <u>Toiletries</u> - an inmate may possess a maximum of 15 toiletry items.

(h) <u>Games</u> - Authorized inmates may possess three but no more than one each of the following games: backgammon, chess, checkers, yahtzee, cribbage board, dominoes, playing cards. All playing pieces must be plastic or wood and cannot exceed a size of 2 ½". Cribbage boards must be made of wood or of solid plastic and cannot exceed the dimensions of 3 3/4" x 14 ½". No electric or battery operated games shall be allowed.

(i) <u>Locks</u> - a Superintendent may restrict number of locks depending on available storage compartments. If facility provides only one locker (footlocker, stand-up, etc.), it can restrict inmates to only one lock.

(j) <u>Eyeglasses/Sunglasses</u> - an inmate may possess a maximum of one pair of prescribed eyeglasses and one pair of sunglasses. No mirrored lenses shall be allowed. Sunglasses are not allowed in level 6 facilities unless medically prescribed. Contact lenses shall be allowed if medically prescribed.

(k) <u>Sewing Kits</u> - Authorized inmates shall be allowed to retain one travel type sewing kit. No scissors of any type are allowed.

(l) <u>Wallet</u> - Authorized inmates may possess one wallet, no double stitched items shall be allowed.

(m) <u>Cup/Bowl</u> - Authorized inmates may possess one cup with a capacity of no more than 12 ounces and one bowl with a capacity of no more than 24 ounces. Cups and bowls must be of unbreakable plastic material only.

(8) <u>Clothing</u>

(a) <u>Trousers:</u> Only solid colored denim blue or black jeans or traditionally styled navy blue or black trousers shall be permitted. Trousers with excessive holes or tears shall not be permitted. Trousers shall not have more

103 CMR: Department of Correction

than four pockets and a watch pocket shall be permitted. Leather trousers or trousers with extra snaps, fasteners, or zippers shall not be permitted.

(b) <u>Shirts:</u>  White dress, navy blue, black or state issue shirts shall be allowed.  Shirts are not to be altered in any way.  No hooded shirts, turtlenecks, appliques, logos, or other insignia shall be permitted with the exception of the institutional logo on shirts supplied by the institution.

(c) <u>Undershirts/T-shirts/Undershorts and bras/panties (female inmates only):</u>  Solid white only.

(c) <u>Sweatsuit/Jogging Suit/Gym Shorts:</u>  must be constructed of cotton or cotton blend material.  Colors restricted to black, gray or navy blue - solid or multi-toned.  No hoods, built in supporters, pictures, appliques, writing or other insignia will be permitted.

(e) <u>Hats:</u>  must be of a solid color, black or navy blue. Only baseball type or state issue wool or knit caps.  No logos, insignia, writing or other ornaments with the exception of the institutional logo when supplied by the institution.

(f) <u>Gloves:</u> Authorized inmates shall be allowed two pairs of cloth gloves, no suede or leather.  No pockets, lining or compartments shall be allowed.

(g) <u>Pajamas/Bathrobes:</u>  Inmate shall be allowed two pairs of pajamas and one bathrobe.  Bathrobe colors restricted to black, navy blue or gray.  Pajama color restricted to light blue.  No hoods, writing, insignia or applique.

(h) <u>Coats/Jackets/Windbreakers:</u>  Color restricted to solid black, navy blue or State issued only blue denim.  No hoods, quilted or removable liners shall not be allowed. No leather or suede garments, logos, writing, insignia or appliques.  No color restrictions on the inside lining of jackets.  One 3/4 length unpleated jacket shall be authorized for retention by handicapped inmates confined to a wheelchair.

(i) <u>Sweaters:</u>  Color restricted to gray only.  Pockets, zippers, hoods, logos, appliques, writing or other insignia are not allowed.

103 CMR: Department of Correction

(j) <u>Thermal Top and Bottom:</u>  Color restricted to solid white.

(k) <u>Handkerchief:</u>  Authorized inmates may possess five handkerchiefs, white only.  Maximum dimensions being 16" x 18".  This item is not permitted to be worn or used as an outer garment.

(l) <u>Footwear:</u>  removable inner soles shall be permitted in athletic shoes only.  Inner soles may be exchanged for a replacement that is purchased from the original manufacturer of the athletic shoe.  No substitute inner soles, steel plates attachments or metal cleats.  Heels are not to exceed 1 ¼" in height; soles shall not exceed one inch in thickness.  Boots shall not exceed eight inches in height measuring from bottom of heel to top of the side seam.  A boot shall be defined as any footwear that covers the ankle.  Footwear below the ankle or covering a portion of the ankle shall be considered a shoe.  Footwear shall not have pockets, compartments or pumps. Footwear restricted to two pair of sneakers and one pair shower thongs in security level 6.

(m) Under no circumstances shall an inmate be permitted to accumulate property to the point where it becomes a fire, sanitation, security or housekeeping hazard.  Where excessive property has been accumulated, certain items, even though previously authorized for retention, may be removed from the inmate's living quarters and forwarded to the property officer who shall proceed with the disposal procedure as outlined in 103 CMR 403.14.

(9) <u>Religious Articles</u>

A list of approved religious articles will be posted quarterly in the inmate libraries.  If an inmate has a request for an item that is not on the list of approved religious articles, the inmate should submit his or her request to the Superintendent.  The Superintendent will forward the request with a recommendation to the Religious Services Review Committee through the Director of Program Services for review. The Religious Services Review Committee consists of the three Assistant Deputy Commissioners, the Director of Offender Management and Placement and the Director of Program Services. This committee shall meet on an as needed basis to review requests for religious articles that are not already approved

103 CMR: Department of Correction

for retention and shall forward their recommendations to the Commissioner for his approval.

### 403.11:  Additional Property Authorized for Retention by Inmates

Additional property items may be approved at any level via written approval of the Property Committee and Commissioner.  The authorized property shall be consistent with the security needs of the institution and the available storage space in inmate living quarters.

### 403.12:  Responsibility For Property Retained By Inmates

Inmates are responsible for the safekeeping of all property which they are permitted to retain in their living quarters.  In addition inmates shall:

(1)  Maintain all receipts of property inventory provided by the property officer to document proof of ownership upon request of a staff member.  If an inmate fails to show proof of ownership, said property shall be considered contraband unless the property has been previously recorded on the inmate's property inventory.

(2)  Ensure that no personal or state property is altered in any manner;

(3)  Ensure not to dispose of any property without the approval of the property officer.

### 403.13:  Incoming Inmate Property

(1)  Property which belongs to an incoming inmate shall be forwarded to the property officer for inventory.  Items authorized for retention by the inmate shall be readied for delivery to the inmates after inventory.  Property not authorized for retention and deemed contraband shall be temporarily stored in the property storage area until its disposal in accordance with 103 CMR 403.14.  Item(s) which could be evidence in disciplinary or criminal proceedings that is located in an inmates personal property shall be confiscated in accordance with the established evidence guidelines and delivered to the Superintendent or his designee for safekeeping or delivery to the appropriate law enforcement agency.  Upon delivery of the approved property to the inmate the Property Officer shall provide a receipt to the inmate.

4/27/01

403-13

103 CMR: Department of Correction

(2) All property not arriving from the sending facility must be pre-approved by the Property Officer via the property permission slip. Permission slips are to be issued to inmates upon request to the Property Officer or his designee. The inmate shall be responsible for completing and returning the permission slip to the Property Officer for approval. Upon approval, the inmate shall forward the approved form to the appropriate party. Delivery of Property from approved permission slips will be accepted via mail delivery only. Incoming parcels must include the approved property slip and contain only the items noted on the slip. If the contents of the parcel do not meet the property slip criteria or contains contraband the entire package may be returned to sender by the Property Officer, who will notify the inmate in writing of this refusal stating the reason. Permission Slips are to be made available to eligible inmates no less than on a quarterly basis. Nothing in 103 CMR 403.13(2) shall limit the Superintendent of a facility from developing internal procedures and time limits regarding the issuance of inmate property permission slips.

(3) Any item available for purchase at the institutional inmate canteen or through approved vendors shall not be authorized to enter via an inmate property permission slip.

(4) Inmates who are housed in security levels 1 or 2 may request to purchase authorized items on approved PRA's via the institutional property officer/permission slip process. All incoming parcels are to be accompanied by the approved permission slip and turned over to the Property Officer upon return for inspection and inventory in accordance with institutional procedures. This shall not apply to T.V.'s, AM/FM radios, fans, hot pots, headphones or walkmans, which must be purchased from a canteen within a Department facility.

(5) Permission slips shall not be approved for inmates who have documented contraband in temporary storage at any institution.

**403.14: Disposal Of Inmate Property**

(1) Within one week of property being deemed contraband, the Property Officer at the facility temporarily storing the contraband shall initially notify the inmate of the item being stored by a contraband notification form. The inmate may elect to dispose of the items by one of the following methods:

(a) have the property retrieved by a visitor;

103 CMR: Department of Correction

    (b)  have the property mailed out to a specified destination;

    (c)  have the property disposed of as seen fit by the institution.

(2)  Once the inmate has selected the method of disposal and responded to the Property Officer in writing, arrangements for disposal will be made.  The property shall be properly marked and recorded in a log book noting the date, method and address sent if appropriate.

(3)  If the inmate does not respond within 30 days of the initial contraband notification a final notification shall be sent to the inmate.  An additional 30 day period shall be provided for the inmate to respond.  If there is no response within the designated time period or if the property has not been disposed of within 90 days the property will be disposed of by the facility in accordance with 103 CMR 403.14(1)(c).

## 403.15:  Seized Inmate Property

Any item of property removed by an officer from an inmate's living quarters shall be held as follows:

(1)  Property which could be evidence in disciplinary or criminal proceedings shall, by the end of the seizing officers tour of duty be delivered to the Superintendent or his designee for safekeeping or delivery to the appropriate law enforcement agency.

(2)  All other property which has been removed shall be forwarded to the property officer who shall inventory and store such property until such time it is disposed of in accordance with 103 CMR 403.14.

(3)  Whenever an inmate is discharged or paroled, all items of property which have been stored by the institution shall be returned except those items properly seized pursuant to 103 CMR 403.15, *Seized Inmate Property*.  Any such seized items shall be returned to the inmate upon resolution of any proceedings, except where items are illegal or in violation of the rules and regulations of the institution of the Department of Correction. The property officer shall check each item of property including property retained in the living quarters, against the inventory, noting on the inventory the date the property is released to the inmate.

103 CMR: Department of Correction

## 403.16:  Long Term Storage Of Inmate Property

(1)  Where an inmate makes a request in writing and satisfactorily provides a compelling need for long term storage of property items the Property Officer may provide approval for the long term storage of items listed below in the property storage area or the institutional safe with a receipt, until such time as the inmate is released or transferred from the institution.

    (a)  licenses issued by the Department of Motor Vehicles;
    (b)  other forms of identification;
    (c)  social security cards;
    (d)  credit cards, checkbooks, savings account passbooks, and/or other financial documents;
    (e)  keys;
    (f)  birth and baptismal, marriage or divorce certificate/documents;
    (g)  wallets and/or coin purses;
    (h)  watches and jewelry;
    (i)  official legal papers and documents in reasonable amounts;
    (j)  small items of sentimental value.

(2)  Under exceptional circumstances, an inmate may petition the Superintendent, in writing, for permission to store additional items in long term property storage.  For those inmates who have not been moved to higher security since April 12, 1991 and are requesting long term storage of contraband items possessed prior to April 12, 1991, the Department of Correction will approve this request provided the inmate submits proof that every member of his/her immediate family who has visited within the previous 12 months cannot accommodate the storage of the contraband property.  These inmates may be allowed to retain memory typewriters or word processors only if they are willing to have the institution send out their machines and have any memory disabled and disk drive sealed at inmate expense.

(3)  The Property Officer shall record all items approved for long term storage on the inmate's inventory and shall provide the inmate with a receipt for these items.

## 403.17:  Transfer Or Release Of Inmate  Property

(1)  Upon notification of transfer of an inmate to higher security, the sending institution Property Officer shall search and inventory all the inmate's property and transfer a ditty bag in accordance with 103 CMR 403.09.  The property officer shall

103 CMR: Department of Correction

note on the inmate's inventory the date and the person to whom each item of property is released. Any and all property retained at the sending facility shall be stored pending the permanent placement notification.

(2) The Deputy Superintendent of Treatment and Classification or his designee shall inform the Property Officer of the sending facility whenever an inmate's security level has been determined or when an inmate has been assigned to a permanent housing location.

    (a) Upon notification of an inmates permanent assignment, the sending institution Property Officer will search and inventory all the inmate's remaining property and transfer all property authorized for retention at that respective security level to the inmate as soon as practicable thereafter. Any and all property which is considered to be contraband at the inmate's permanent assigned security level or housing location shall be disposed by the sending facility in accordance with 103 CMR 403.14, *Disposal of Inmate Property*.

    (b) All food items in possession of an inmate shall not be transferred between institutions. All such food items shall be considered contraband and disposed of in accordance with 103 CMR 403.14, *Disposal of Inmate Property*.

    (c) The inmate shall sign a receipt for the property returned and such receipt shall be kept with the inmate's inventory. In the event that an inmate refuses to sign a receipt, such refusal shall be noted on the inventory by the property officer but shall not be grounds for withholding the property.

(3) Whenever an inmate is absent from his living quarters for an extended period of time (e.g. outside hospital, furlough, isolation), the officer in charge of the area in which the inmate is housed shall, where practical, securely lock the inmate's living quarters or, make arrangements to have the inmate's property inventoried and stored in a secure location during his/her absence.

(4) When an inmate is transferring laterally or to lower security, his/her property shall be forwarded to the receiving facility in accordance with 103 CMR 403.17 (2)(a),(b), and (c).

103 CMR: Department of Correction

**403.18:  Property Of Escapees Or Deceased Inmates**

(1)  Upon discovery of the escape or death of an inmate, the officer in charge of the area in which the inmate was housed shall secure the living quarters.  All property within the inmates living quarters shall be forwarded as soon as possible to the property officer who shall list the items on the inmate's inventory and store them in the property storage area.

(2)  Where an escapee is returned to the care and custody of the Department within one year from the date of escape, approved property shall be transferred as soon as practicable to the housing facility.  Property not authorized for retention at the housing facility shall be disposed of in accordance with 103 CMR 403.14, *Disposal of Inmate Property*. If the inmate is on escape for a period of more than one year, the Department may dispose of the inmate's property in accordance with 103 CMR 403.19 (2)through (5).

**403.19:  Disposal Of Unclaimed Inmate Property**

Property of deceased inmates shall be released to the proven administrator or executor of the deceased inmate and can be picked up by such person from the institution where the property is stored. Such person shall sign a receipt for the property received.  Any property belonging to a deceased inmate which remains unclaimed after one year shall be disposed of in accordance with the following procedures.

(1)  The Superintendent shall notify the listed next of kin of the former inmate, in writing, that said property will be disposed of if not claimed within 30 days of the date of the letter.

(2)  If no claim is received within the specified time period, a special board, composed of the Superintendent of the institution where the property is being stored, and a representative of the department designated by the Commissioner shall ascertain whether the unclaimed property has any sale value.

(3)  If the property is determined to have sale value, the special board shall solicit offers for purchase from three reputable dealers in like property and shall sell the property to the highest bidder.  The proceeds of any such sale shall be paid to the State Treasurer by the Superintendent.

103 CMR: Department of Correction

(4) If the property is determined not to have sale value, or if no offer is received in response to solicitation for bids as described the special board may dispose of such property in such a manner as deemed appropriate.

(5) A complete record of disposal for unclaimed property shall be completed and signed by the members of the special board and filed with the former inmate's institutional records.

### 403.20: Liability For Loss, Damage Or Destruction Of Inmate Property

Nothing in 103 CMR 403.00 is intended to create any liability on the part of the Commonwealth, the Department or any of its employees for loss, damage or destruction of property where such liability does not already exist under established law.


### 403.21: Property Transactions Involving Inmates

No inmate or employee may sell, barter, exchange, lend, borrow or in any other manner transfer any item or personal property to any inmate or employee of the Department except with the written approval of the Superintendent or his designee. 103 CMR 403.21 shall not be construed to prohibit transfer or exchange of legal materials.

### 403.22: Time Limits

Unless otherwise required by law, time limits set forth in 103 CMR 403.00 are directory and may be modified by the Superintendent or the Commissioner under appropriate circumstances.

### 403.23: Emergencies

Whenever in the opinion of the Commissioner, Deputy Commissioner or Superintendent of a state correctional institution, an emergency exists which requires suspension of all or part of 103 CMR 403.00, he may order such suspension, provided that any such suspension ordered by the Superintendent lasting beyond 48 hours is authorized by the Commissioner.

### 403.24: Staff Responsibilities

The Property Committee shall perform an annual review of 103 CMR 403.00 and review suggestions or recommended changes to the policy

103 CMR: Department of Correction

from superintendents.  Superintendent of each institution shall be responsible for implementing and monitoring compliance with 103 CMR 403.00.

### 403.25:    Annual Review Date

103 CMR 403.00 shall be reviewed at least annually from the effective date by the Commissioner or his designee.  The party or parties conducting the review shall develop a memorandum to the Commissioner with a copy to the Central Policy File indicating revisions, additions, or deletions which shall be included for the Commissioner's approval.

### 403.26:   Severability Clause

If any article, section, subsection, sentence, clause or phrase of 103 CMR 403.00 is for any reason held to be unconstitutional, contrary to statute, in excess of the authority of the Commissioner or otherwise inoperative, such decision shall not affect the validity of any other section, subsection, sentence, clause or phrase of 103 CMR 403.00.


REGULATORY AUTHORITY

103 CMR 403.000; M.G.L. c.124.