UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EXHIBIT
12

WILLIAM STEVENS,

      **Plaintiff,**

v.

Civil Action No. 04-11938 JLT

ROBERT HOWLAND, et al.,

      **Defendants.**

### AFFIDAVIT OF JOSPEH MURPHY

I, Joseph Murphy, do on oath depose and state:

1. I am an employee of the Massachusetts Department of Correction ("DOC") and presently serve as the Deputy Superintendent for the Massachusetts Treatment Center for Sexually Dangerous Persons ("Treatment Center"). I have held this position since January, 2005. Prior to serving as the Deputy Superintendent of the Treatment Center, I worked as the Director of Treatment for the Treatment Center for approximately nine (9) years.

2. As the Deputy Superintendent for the Treatment Center, I supervise the religious programs available at the facility. In particular, I supervise the facilities' Director of Treatment who has direct responsibility for the Treatment Center religious groups and the four DOC chaplains. The information contained herein is based on my personal knowledge.

3. I am familiar with William Stevens, who is currently under civil commitment to the Treatment Center, and the claims he has raised in his complaint.

4. The Treatment Center houses three populations of adult male sex offenders: (i) persons civilly committed as "sexually dangerous persons" ("SDP's") and committed for an indefinite period of one day to life pursuant to G.L. c. 123A; (ii) inmates committed to DOC's

custody who are participating in DOC's voluntary sex offender treatment program ("SPI's"); and (iii) persons awaiting adjudication as SDP's under G.L. c. 123A, §§ 12-14.

5. As a result of the Superior Court's decision in Durfee v. Maloney, Consolidated Suffolk Civil Actions Nos. 98-2523B & 98-3082B, issued in July, 2001, DOC decided to change its management of the Treatment Center to keep SDP's and SPI's separate and apart at all times. On December 10, 2001, a "separate and apart" policy was implemented at the Treatment Center.

6. The implementation of the "separate and apart" management policy necessitated that the two populations be divided for purposes of access to the common areas of the facility (such as the gym, exercise yard, visiting room, religious activities and library), in which they previously had the opportunity to commingle. Where possible, SDP's continue to receive priority in terms of access to the Treatment Center's common areas. The present population of the Treatment Center is 626, with 316 SDPs and 312 SPIs.

7. The DOC recognizes fifteen (15) religions, including Buddhist, Christian Scientists, Greek Orthodox, Hare Krishnas, Muslims, Jehovahs' Witnesses, Jews, Mormons, Native Americans, Protestants, Rastafarians, Quakers, Roman Catholics, Scientologists and Wiccans. The Department provides chaplains who are Catholic, Muslim, Protestant and Jewish for many of its prisons. Presently, the Treatment Center has part-time Catholic, Muslim, and Protestant chaplains on site. However, any Treatment Center resident may meet with and seek counseling with a DOC chaplain, no matter what the denomination.

8. Currently, the Treatment Center residents engage in religious activities for Catholics, Jews, Protestants, Muslims, Native Americans, Jehovah Witnesses, Buddhists and Wiccans. The religious groups meet in the facility's chapel, on the "D" corridor. However, because we must provide separate meeting space for SDP and the SPI residents, the Treatment Center also uses a room on the "B" corridor to accommodate additional religious group

meetings. The dimensions of the "B" corridor therapy room are 16 feet, 9 inches by 10 feet, 4 inches and the dimensions of the Treatment Center chapel are 15 feet, 6 inches by 15 feet, 6 inches. The "B" corridor room is used for religious programs because is provides correctional staff with excellent visibility of the activities held in the room for security purposes. The "B" corridor room is more than sufficient to accommodate the four (4) or (5) Wiccans that generally attend the SDP Wiccan meetings.

9. The Treatment Center provides a schedule of meeting times for the chapel ("D" corridor) and the "B" corridor room. See Attachment A. Generally, the SDPs have access to the chapel and the "B" corridor room on Wednesdays and Fridays and the SPI have access to the rooms on Tuesdays and Thursdays. As noted on the meeting schedules for the chapel and the "B" corridor room, there are no activities in the two rooms Monday through Friday between 11:00 a.m. and 1:00 p.m. because the residents are to be in their cells for count and then go to lunch. Similarly, there are no activities scheduled between 4:00 p.m. and 7:00 p.m. since the residents must be in their cells for count and then go to dinner. Presently the SDP Wiccan group meets on Wednesday and Friday evenings from 7:00 p.m. to 8:40 p.m.

10. The "C" corridor therapy room is used solely for conducting behavior therapy and is not available for use by any religious groups. The dimensions of the "C" corridor therapy room are 16 feet, 6 inches by 11 feet, 6 inches.

11. DOC regulations place strict limits on the type and amount of personal property inmates may keep within their cells. 103 CMR 403.10. The restrictions on personal property are necessary to reduce fire hazards, reduce areas where inmates can secrete contraband, facilitate quicker and more thorough cell searches, and reduce sanitation and housekeeping hazards.

12. In order to process and fairly accommodate the multitude of practices and religious property item requests by inmates, the DOC has developed a Religious Services

3

403.10(9). The RSRC is comprised of three Assistant Deputy Commissioners who represent the Department of Correction's penultimate security concerns and the Director of Program Services, who functions as chairperson of the committee. 103 CMR 403.10(9). All recommendations made by the RSRC regarding inmate requests for religious services and property are forwarded to the Commissioner for her final decision.

17. I am not aware of any Wiccans in Massachusetts who are available to volunteer to lead corporate worship services for the Wiccans at the Treatment Center. The Department's Director of Volunteer Services, William Milhomme has advised staff that there are no Wiccan volunteers currently working at any Department facility. I have not had a request for a volunteer from any current member of the Wiccan groups at the Treatment Center.

18. The Wiccans at the Treatment Center are provided with cake and juice for the celebration of the Sabbats. It is my understanding that during the period of time when I was temporarily reassigned from my duties as the Treatment Center's Director of Treatment to assist in the launch of the Department's computerized information system, from January, 2004 to May, 2004, there were several occasions in which, due to staff miscommunications, the Wiccans did not receive cake and juice for their Sabbats. The communication problems were resolved upon my return to my duties at the Treatment Center, and I have not been advised by plaintiff or any other Wiccan that the problem has continued.

19. Pursuant to the Handbook, Wiccans at the Treatment Center have access to a number of religious property items, including, Tarot cards, an altar cloth and altar bowl, runes and cloth bag, magic circle, crow feathers, a brass bell, worry stones, meditation tapes, candles and a wand for use in corporate worship. However, candles may only be used for corporate worship if a volunteer is present. The Treatment Center has several sets of CDs for use by Wiccans in corporate worship, including medication CDs and purchased six posters for use by

the Wiccans. Wiccans may also purchase medallions and prayer oil for individual practices. The plaintiff may also purchase books pertaining to Wiccan practices on his own through several approved booksellers. Requests for religious property not presently approved by the Department must be made through the RSRC process. 103 CMR 403.10(9) See Attachments B & C.

20. Pursuant to the Department's Inmate Management policy, 103 DOC 400.00 et seq., inmates are not permitted to be placed in a position of authority or control over other inmates. The purpose of this policy is to prevent any situation where an inmate may gain control over another inmate and uses the superior position to take advantage of the inmate, including seeking benefits, privileges or financial gains. Permitting an inmate to be placed in positions of authority over other inmates may enable the inmate to exert undue influence over other inmates. This can be especially problematic in the context of religious services and activities. Treatment Center residents are not permitted to lead any religious worship services. See 103 DOC 400.06.

21. I have reviewed the sign-up sheets for the SDP Wiccan weekly meetings for the past year. See Attachment D. The sign-up sheets show that plaintiff has not attended a single Wiccan meeting in the current year.

22. Some of the Treatment Center religious groups for the SDPs and the SPIs may meet more than twice a week where there are volunteers from the community who are willing to come to the Treatment Center and lead additional groups. Presently, there are three separate religious groups from the community who come in as volunteers and lead groups for the Protestant SDPs and SPIs at the Treatment Center: the Emmaus Bible Study groups, the Zion Bible Study groups and the Spanish-English services. There are no other religious volunteers who regularly assist religious groups at the Treatment Center.

23. For security reasons, including concerns for escape, no Treatment Center groups are permitted to meet outdoors.