UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-11938-JLT

WILLIAM G. STEVENS,

    Plaintiff,

v.

ROBERT HOWLAND, et al.,

    Defendants.

PLAINTIFF'S OBJECTIONS TO FINDINGS AND
RECOMMENDATIONS PURSUANT TO RULE 72

    Now comes the plaintiff, William G. Stevens, acting Pro Se in the above entitled action, and pursuant to Rule 72, Federal Rules of Civil Procedure, submits the following objections to the Report and Recommendation on Cross-Motions for Summary Judgement, issued in this action on March 29, 2007 by United States Magistrate Judge Dein.

OBJECTIONS

    1.   § 1983

    Plaintiff objects to the Magistrate Judge's finding that he failed to prove that the conduct of the defendants has worked a denial of rights secured by the Constitution or federal law, which is the second element necessary to a claim under section 1983.  Report and Recommendations ("Rep.") pg 17.

    The plaintiff has adequately shown that, for a period of over four years, while in the custody of the Department of Correction, he was able to conduct and/or participate in Wiccan corporate worship services for Sabbats (8 times per year) and

Esbats (13-26 times per year). Plaintiff's Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgement ("Pltff's Opp. Memo."), Ex. 3 and Memorandum of Law in Support of Defendants' Cross-Motion for Summary Judgement ("Defts' Memo. Sum. Judge."), pg 10 and Ex. 4, pg 22, line 16-17. The subsequent denial of the plaintiff's right to conduct and participate in corporate worship clearly imposes a "substantial burden" on Plaintiff's Constitutionally and federally protected rights to the free exercise of his religious beliefs.

2.  Free Exercise of Religion

Plaintiff objects to the Magistrate Judge's finding with regard to Plaintiff's Free Exercise claim, particularly the language contained in footnote 6:

> 6/ Because the parties agree that this case is governed by the Supreme Court's analysis in Turner and O'Lone, this court will not address whether the Supreme Court's decision in Employment Div., Dep't of Human Res. of OR. v. Smith, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) arguably might require a different analysis in cases involving infringements on prisoners' constitutional right of free exercise. See Levitan v. Ashcroft, 281 F. 3d 1313, 1318-19 (D.C. Cir. 2002)(while "[m]any courts have grappled with the question of how the Court's decision in Smith interacts with the prisoner-specific test set forth in Turner and O'Lone most courts of appeal have continued to apply Turner and O'Lone in analyzing prisoners' constitutional rights).

Plaintiff objects to this assertion. Though the plaintiff has made passing reference to the Turner and O'Lone decisions, he has clearly shown that a higher standard of review is demanded in this action, Pltff's Opp. Memo. pg 14 and 16; Plaintiff's Motion for Summary Judgement ("Pltff's Sum Judge.") pg 6-8. Further,

while the Magistrate Judge's finding may be on all fours with regard to "prisoners' constitutional rights", it must be remembered that the plaintiff is a civilly committed person. The Turner standard is a much harsher standard applied to prison cases, whereas in this action, the standard that should be applied to civilly committed persons would be the least restrictive alternative. For an example of the difference in the treatment of First Amendment cases, See Procunier v. Martinez, 416 U.S. 396, 413-414 (1974)(application of least restrictive standard), and Thornburg v. Abbot, 490 U.S. 401, 410 (1989)(applying the more restrictive Turner test).  The courts have repeatedly found that a person who has been involuntarilly committed due to a mental abnormality is entitled to be treated more considerately than criminals "whose conditions of confinement are designed to punish, and is entitled to the least restrictive conditions of confinement...." Youngberg v. Romeo, 457 U.S. 307, 324 (1982); Shelton v. Tucker, 364 U.S. 479, 488 (1960); Seling v. Young, 531 U.S. 250, 265 (2001).  "The fact that treatment for committed persons is provided under the auspices of the Department of Correction does not render the commitment penal in nature." Commonwealth v. Bruno, 432 Mass. 489, 491-502, 735 N.E. 2d 1222 (2000).  Additionally, it should be noted that the Religious Land Use and Institutionalized Persons Act of 2000 was passed, in part, to overrule Turner when it comes to religious issues. Further, free exercise claims under RLUIPA encompass a higher standard of review than that which applies to Constitutional free exercise claims. Thompson v. Vilsack, 328 F. Supp 2d 974.

3. <u>Equal Protection</u>

The plaintiff argues that he has established an equal protection claim, especially with regard to the Defendants' failure to provide a Wiccan chaplain. The defendants "provide [paid] chaplains who are Catholic, Muslim, Protestant and Jewish for many of its prisons...." Defts' Memo. Sum Judge., Ex. 5. The defendants do not provide a Wiccan chaplain. Despite the Magistrate Judge's introduction of "Christian Scientists, Greek Orthodox, Hare Krishnas, Jehovah's Witnesses, Native Americans, and Rastafarians". Rep. pg. 27, Plaintiff has only alleged unequal treatment with that provided to Catholics, Muslims, Protestants and Jews. It would be incumbant upon followers of the other faiths cited, not this plaintiff, to object to the inequality of their treatment by the defendants. Despite the inclusion of these additional religious groups in the Report, none of them - with the exception of the Native Americans and Buddhists are practiced by civilly committed residents of the Treatment Center. Additionally, the Buddhists have a volunteer who apparently leads corporate worship services on the "1st/3rd Tuesday". Defts' Memo. Sum. Judge., Ex. 2, Attachment A - "D" Corridor Room Schedule. The plaintiff has clearly demonstrated that he is being treated differently than similarly situated civilly committed residents of the Treatment Center who are followers of mainstream religious beliefs.

4. <u>R.L.U.I.P.A.</u>

The Religious Land Use and Institutionalized Persons Act of 2000 was passed to significantly increase the protections provided to the religious practices of institutionalized people.

Despite the fact that neither the Supreme Court nor the First Circuit has yet weighed in to interpret the term "substantial burden", it has been generally found by the courts that the words in a statute are to be accorded their ordinary meaning and common approved usage, and further, that we derive the words' ordinary meanings from sources presumably known to the statute's enactors such as dictionary definitions and other legal contexts. Other Circuits have offered widely differing definitions of "substantial burden", and are of little definitive use here. The Random House Webster's School & Office Dictionary, revised & updated ed 531, (2000) defines "substantial" as "considerable, as in amount; ample"; American Heritage Dictionary of the English Language 809 (3ed 1994) "Not imaginary, real; ample; sustaining". Although RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, see 42 U.S.C., § 2000cc 5 (7)(A), the Act does not preclude inquiry into the sicerity of a prisoner's professed religiosity. Cf Gillette v. United States, 401 U.S. 437, 457 (1971) ("The 'truth' of a belief is not open to question; rather, the question is whether the objector's beliefs are 'truly held'." (quoting U.S. v. Seeger, 380 U.S. 163, 185 (1965))). Plaintiff respectfully submits then that the "motivation test" accurately reflects the meaning of "substantial burden" as it is used in RLUIPA. Therefore, "state action substantially burdens exercise of religion within the meaning of RLUIPA when it prevents a religious adherent from engaging in conduct both important to adherent and motivated by sincere religious belief." Cornel v. Paul, 316 F.

Supp. 2d 868. The Magistrate Judge has, however, chosen to recommend that this Court adopt the standards set by the Fifth, Seventh, Ninth, and Eleventh Circuits, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."

Whichever definition this Court chooses to rely upon in this action, it is clear that the defendants have imposed a substantial burden upon the plaintiff's exercise of his religious beliefs. If a state or local government was to enact a policy where: all followers of the Catholic faith were allowed to access their community churches but that the followers could not conduct worship services; that priests had to be identified and provided by the government, and that the government could not or would not provide the priests necessary; and finally, that the government would provide the eucharist on holy days but not allow the necessary ceremonies to be performed, there would be no question as to whether a substantial burden had been imposed. The public outcry would be deafening. The plaintiff respectfully submits that this is exactly the substantial burden the defendants have placed upon him. Plaintiff, for a period of 13 years, prior to relocating to Massachusetts, attended both Sabbat and Esbat worship ceremonies. Pltff's Opp. Memo., Ex. 3, ¶ 3; Rep. pg 5. Plaintiff has offered explaination as to his lapse in attendance at corporate worship ceremony. Pltff's Opp. Memo., pg 11. The defendants have not objected to this. Also, a lapse in corporate ceremony attendance does not mark plaintiff as insincere. See

Cole v. Fulcomer, 588 F. Supp. 772, 774-75 (M.D. PA 1984); Reed v. Fulcomer, 842 F. 2d 960, 963 (7th Circuit 1988). Plaintiff was incarcerated in 1999, Complaint ¶ 12. Plaintiff was transfered to the Treatment Center in 2004, Complaint ¶ 14. These facts are undisputed. Plaintiff led and/or participated in nearly all of the corporate Sabbat and Esbat ceremonies that occured during his entire criminal incarceration, Pltff's Opp. Memo., Ex. 3; Defts' Memo. Sum. Judge., pg 10 and Ex. 4. At these ceremonies Plaintiff was able to utilize candles and incense while unsupervised, Pltff's Opp. Memo., pg 6. These facts are undisputed. The defendants own Religious Handbook identifies many ceremonial items common to Wiccan corporate worship, Defts' Memo. Sum. Judge., Ex. 5. Defendants have not provided these items despite requests, Pltff's Opp. Memo., Ex. 5. These are undisputed facts. Plaintiff was forced by the defendants to significantly modify his religious practice when they chose to begin enforcing their policy against inmate led corporate worship services, Pltff's Opp. Memo., Ex. 7; Defts' Memo. Sum. Judge., Ex. 7. This despite the fact that there has never been any hint of impropriety on the plaintiff's part. Prison administrators cannot merely brandish the words "safety" and "security" and expect that their actions will automatically be deemed Constitutionally permissable conduct. See Campos v. Coughlin, 854 F. Supp. 194 (S.D. NY 1994). Finally, the plaintiff is ordained and qualified to lead corporate worship services. These facts are all undisputed. By the foregoing, the plaintiff respectfully submits that the acts of the defendants have substantially burdened the plaintiff's religious exercise

within the meaning of RLUIPA.

5. <u>Plaintiff's Remaining Claims</u>

The Magistrate Judge did not review the remaining claims in detail. However, should this Court set aside the recommendations provided in this action, all of the Plaintiff's remaining claims will be ripe for review.

CONCLUSIONS

For all of the reasons detailed herein, Plaintiff respectfully requests that the District Judge, to whom this case is assigned, modify or set aside the Magistrate Judges Report and Recommendations.

Respectfully Submitted,

4-8-07

_____
William G. Stevens, Plaintiff Pro Se
30 Administration Road
Bridgewater, MA 02324

VERIFICATION

I, William G. Stevens, hereby swear under the pains and penalty of perjury that all of the information in the foregoing Objection is true and correct.

DATED: _____     _____
                     William G. Stevens

CERTIFICATE OF SERVICE

I hereby state that I caused a copy of the foregoing Objection to be served upon Richard McFarland, Esq. counsel for the defendants by Intra Institutional mail.

DATED: _____     _____
                     William G. Stevens